

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1176-07

**ALBERTO CANTU, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE THIRTEENTH COURT OF APPEALS
### CAMERON COUNTY

**COCHRAN, J., delivered the opinion of the unanimous Court.**

### O P I N I O N

Appellant, Alberto Cantu, was arrested for DWI on March 5, 2003. He was released

on bond the next day, but was not formally charged for this offense until July 6, 2004, more

than a year later. Shortly thereafter, he filed a motion to dismiss for lack of a speedy trial.

After a hearing, the trial court denied the motion. Appellant then pled guilty and appealed

the trial court's ruling. The court of appeals reversed, concluding that, under *Barker v.*

*Wingo*,[1] appellant was denied his constitutional right to a speedy trial.[2]  We granted the

State's petition to determine whether the court of appeals properly deferred to the trial court's

factual findings under the four *Barker* speedy-trial factors.[3]  We find that it did not.

## I.

### A.    The Facts

Harlingen police arrested appellant at the scene of an accident.  They found him still

behind the wheel of his truck, which was embedded in a chain-link fence.  He posted bond

the next morning, but a DWI (second offender) information was not filed for sixteen months.

Appellant filed a motion to dismiss for lack of a speedy trial less than two months later.

The trial judge held a hearing to consider whether appellant had been denied his right

to a speedy trial under the four *Barker* speedy-trial factors:  1) length of the delay, 2) reason

for the delay, 3) assertion of the right, and 4) prejudice to the accused.[4]  The judge took

judicial notice that the delay was sufficient to trigger the *Barker* test.  The State's witnesses

explained that the delay in filing charges was because the Harlingen police "lost" the file for

---

[1] 407 U.S. 514 (1972).

[2] *Cantu v. State*, 2007 Tex. App. LEXIS 2411 (Tex. App.—Corpus Christi 2007) (not designated for publication).

[3] The State's ground for review reads:  "The Court of Appeals disregarded, although cited, the proper standard for review of a trial court's denial of a motion to dismiss based upon the assertion of a violation of speedy trial right pursuant to *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002) and *Kelly v. State*, 163 S.W.3d 722, 726 (Tex. Crim. App. 2005). TEX. R. APP. P. 66.3(c)."

[4] *Barker*, 407 U.S. at 530.

an entire year.  Appellant's counsel stipulated that the district attorney's office was not at fault for the missing file, but he argued that police negligence is not a good reason for delay. The trial judge agreed.

Appellant then testified as to "prejudice."  He said he was sixty-two years old, had lived in Cameron County all his life, and had retired from a job with the City of Harlingen. He currently worked as a hunting guide in Mexico and did some "easy" maintenance work for friends.  He said that he had been "nervous" about the case and was a "nuisance" to his own attorney; he was not "at ease," and his unease put pressure on his family; finally, he had to call his bondsman every Monday, which was a constant "reminder of what's hanging there."  All in all, he said,

> it's like having something hanging over my head.  You know get–you know, it's–to me why waiting so long?  You know, I want–want to get this over.  I call–call my attorney, you know, and ask, you know.  There's days that sometimes I have trouble sleeping.  And recently I went into the hospital, I got an ulcer.  I don't know that–I didn't have–I'm not saying this caused it, but, I mean, it's a bad ulcer and it's being treated –

Appellant also testified that he had talked with his attorney about putting an ad in the paper to find the driver of the red Camaro that he said caused the accident.  But he did not think anyone would come forward because it was a "hit and run."  He said it would be even harder to find that driver now–a year later.  The trial judge questioned appellant about the accident and about why he did not begin looking for the other driver right after it.  Appellant said that he had a copy of the accident report that listed the names and addresses of other drivers and witnesses, but he said that he did not seek any other information because his

insurance company took care of everything and told him not to intervene. Appellant's counsel explained that they chose not to put an ad in the paper because "the criminal case hadn't come up and we weren't going to pursue–he didn't pursue the civil case. He got paid on his car and the other cars didn't make a claim."

Appellant's counsel then testified about his "assertion of the right" to a speedy trial. Counsel said he made several calls to the DA's office in an effort to get the case filed.[5] The trial judge questioned him on whether he made notes. Counsel said he'd made one note on August 26, 2003, that he talked to his client, after calling the DA's office, about whether to try to plead guilty before September 1, 2003, when a new law went into effect that would add civil fees. "[H]e struggled with that decision, I put in my notes."

| | |
|---|---|
| Court: | Who struggled with that decision? |
| Defense Attorney: | He struggled with the decision whether I should–whether we should try to plea before September 1st or just wait until they filed it normally. |
| | . . . |
| | [H]e wanted to take care of it at first and then I couldn't get the case filed and so he told me that–after that he just said, okay, we'll just have a trial because he didn't think he was guilty anyway. |

The trial court then asked to see the August 26 note which read "TTC," meaning "talked to client." The trial court said, "It doesn't say you talked to the DA's office, it says you talked to the client." Counsel said he was "just telling [the trial judge] out of my memory" that he had "talked to the DA's office and they said the case is pending but they don't have it. And he said, 'Well, don't worry about it, 'cause I just want to try it anyway, because I'm not

---

[5] One person he said he talked to was Israel Cano.

guilty.'"

After hearing the evidence, the trial judge agreed that the length-of-delay and reason-for-delay factors were on appellant's side, but that his evidence was "weak" on the third and fourth factors. Addressing appellant's ulcer as possible evidence of prejudice, the trial judge commented, "Yeah, but if he drinks, you're going to get an ulcer . . . . I mean, I have–I have someone who already has a conviction for a DWI, I'm looking at somebody who may have been intoxicated, again, who may have been in a car accident due to intoxication." The trial judge said that appellant failed to demonstrate prejudice to his defense because "the police report has the two eyewitnesses that were there at the scene, it gives you the name of them, their phone numbers. They're right here" and "they witnessed your client and the Camaro racing down the street at over 70 miles an hour before the collision." The trial judge also noted that "your client testified that he didn't believe at that time [just after the wreck] that a newspaper ad would have helped at all. That he didn't think anyone would come forward at that time." The trial judge concluded that appellant had not "crossed the hurdle" on factors three and four.[6] After the trial judge denied his speedy-trial motion, appellant entered a negotiated plea of guilty, and the trial judge placed him on community supervision for twelve months.

---

[6] The trial judge explained to appellant's attorney, "If I felt that you met prongs three and four, I would not hesitate to grant your motion and dismiss this case. I truly don't think that you have, but I'll let you bring in more case law to try to show me otherwise."

**B.    The Direct Appeal**

The court of appeals, like the trial judge, found that the first and second factors weighed against the State,[7] but it disagreed with the trial judge on the latter two factors.

Regarding the third factor, assertion of the right, the court of appeals stated,

> Given the particular facts of this case, we find it understandable that Cantu first framed his speedy trial complaint in a motion seeking dismissal. Because of the State's delay in charging him, he could not have made a speedy trial complaint in any form for sixteen months after he was arrested; a court that had jurisdiction to entertain a speedy trial complaint simply did not exist. Because Cantu asserted his speedy trial rights promptly after the State filed a charge, this third factor also weighs in Cantu's favor.[8]

Regarding the fourth factor– that of prejudice–the appellate court agreed with the trial judge in rejecting appellant's testimony that the delay impaired his defense by limiting his ability to find witnesses. It stated, "Cantu gave no adequate reason for why he was precluded from placing the ad until after he was formally charged."[9] But the appellate court disagreed with the trial court's skepticism concerning appellant's testimony about his personal anxiety, noting,

> The State did not challenge this testimony during Cantu's cross-examination,

---

[7] *Cantu*, 2007 Tex. App. LEXIS 2411, at *6-9. The appellate court found that the length of delay did not weigh "heavily" against the State because it was undisputed that the delay was unintentional. *Id. See Phillips v. State*, 650 S.W.2d 396, 400 (Tex.Crim. App.1983) ("[W]e are mindful that a negligent delay is not to be equated with an intentional one. But, as the Supreme Court said in *Barker*, '[a] more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.'").

[8] *Cantu v. State*, 2007 Tex. App. LEXIS 2411, at *10-11 (citations omitted).

[9] *Id.* at *12 n.34.

nor at any other time. As a result, Cantu's testimony "is at least some evidence of the type of 'anxiety' that the Supreme Court considers under the prejudice prong of *Barker*." Cantu also testified that since his arrest, he has had to report to a bondsman every Monday, which supports an inference of actual prejudice. In light of this testimony, we find that the fourth factor favors Cantu.[10]

Concluding that all four *Barker* factors weighed in appellant's favor, the appellate court held that the trial court erred in denying his motion to dismiss. The court of appeals reversed the conviction and dismissed the prosecution with prejudice.[11] In our Court, the State argues that the court of appeals failed to provide the appropriate deference to the factual findings of the trial court and that it viewed the facts "myopically" instead of "in the light most favorable to the trial court's ruling."[12]

## II.

### A.     The Right to a Speedy Trial

The Sixth Amendment to the United States Constitution guarantees an accused the right to a speedy trial.[13] A speedy trial protects three interests of the defendant: freedom from oppressive pretrial incarceration, mitigation of the anxiety and concern accompanying public accusation, and avoidance of impairment to the accused's defense.[14]

The right attaches once a person becomes an "accused"–that is, once he is arrested or

---

[10] *Id.* at *13 (citations omitted).

[11] *Id.* at *14.

[12] State's Brief at 4.

[13] *Zamorano v. State*, 84 S.W.3d 643, 647 (Tex. Crim. App. 2002).

[14] *Barker*, 407 U.S. at 532; *United States v. Ewell*, 383 U.S. 116, 120 (1966).

charged.[15]  Supreme Court precedent requires state courts to analyze federal constitutional speedy-trial claims "on an ad hoc basis" by weighing and then balancing the four *Barker v. Wingo* factors:  1) length of the delay, 2) reason for the delay, 3) assertion of the right, and 4) prejudice to the accused.[16]  While the State has the burden of justifying the length of delay, the defendant has the burden of proving the assertion of the right[17] and showing prejudice.[18]  The defendant's burden of proof on the latter two factors "varies inversely" with the State's degree of culpability for the delay.[19]  Thus, the greater the State's bad faith or official negligence and the longer its actions delay a trial, the less a defendant must show actual prejudice or prove diligence in asserting his right to a speedy trial.

The *Barker* test is triggered by a delay that is unreasonable enough to be

---

[15] *United States v. Marion*, 404 U.S. 307, 321 (1971) ("[I]t is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy-trial provision of the Sixth Amendment.").

[16] *State v. Munoz*, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999).  TEX. CONST. art. I, § 10 also guarantees the accused in all criminal prosecutions the right to a speedy and public trial. This right exists independently of the federal guarantee, but this Court analyzes claims of a denial of the state speedy-trial right under the same four *Barker* factors.  *Harris v. State*, 827 S.W.2d 949, 956 (Tex. Crim. App. 1992).

[17] *See Barker*, 407 U.S. at 531.

[18] *See Ex parte McKenzie*, 491 S.W.2d 122, 123 (Tex. Crim. App. 1973) (stating that "if an accused made a prima facie showing of prejudice, the State 'must carry the obligation of proving that the accused suffered no serious prejudice beyond that which ensued from the ordinary and inevitable delay'").

[19] *Robinson v. Whitley*, 2 F.3d 562, 570 (5th Cir. 1993) (citing *Doggett v. United States*, 505 U.S. 647, 657 (1992)).

"presumptively prejudicial."[20]  There is no set time element that triggers the analysis, but we have held that a delay of four months is not sufficient while a seventeen-month delay is.[21]

Once the *Barker* test is triggered, courts must analyze the speedy-trial claim by first weighing the strength of each of the *Barker* factors and then balancing their relative weights in light of "the conduct of both the prosecution and the defendant."[22]  No one factor is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial."[23]  Instead, the four factors are related and must be considered together along with any other relevant circumstances.  As no factor possesses "talismanic qualities," courts must engage "in a difficult and sensitive balancing process" in each individual case.[24]

Dismissal of the charging instrument with prejudice is mandated only upon a finding

---

[20] *Doggett v. United States*, 505 U.S. 647, 652 n. 1 (1992) ("'[P]resumptive prejudice' does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* enquiry.").

[21] *Pete v. State*, 501 S.W.2d 683, 687 (Tex. Crim. App. 1973) ("Appellant herein was tried [for rape] approximately four months after he was bench warranted from the Texas Department of Corrections.  It is our opinion that this short period of time could in no way be construed as 'presumptively prejudicial.'"); *Phillips v. State*, 650 S.W.2d 396, 399 (Tex. Crim. App. 1983) ("Although there 'is no precise length of delay which irrefutably constitutes a violation of the right to a speedy trial in all cases,' . . . a seventeen month delay is sufficient to raise the issue.").  *See also Doggett*, 505 U.S. at 651, 652 n.1 (noting that courts "have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year").

[22] *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002) (quoting *Barker*, 407 U.S. at 530).

[23] *Id.* (quoting *Barker*, 407 U.S. at 533).

[24] *Id.* (quoting *Barker*, 407 U.S. at 533).

that an accused's Sixth Amendment speedy-trial right was actually violated.[25]  Because

dismissal of the charges is a radical remedy,[26] a wooden application of the *Barker* factors

would infringe upon "the societal interest in trying people accused of crime, rather than

granting them immunization because of legal error."[27]  Thus, courts must apply the *Barker*

balancing test with common sense and sensitivity to ensure that charges are dismissed only

when the evidence shows that a defendant's actual and asserted interest in a speedy trial has

been infringed.[28]  The constitutional right is that of a speedy trial, not dismissal of the

charges.

**B.        The Standard of Review**

As stated in *Zamorano v. State*, "In reviewing the trial court's ruling on appellant's

federal constitutional speedy trial claim, we apply a bifurcated standard of review:  an abuse

of discretion standard for the factual components, and a *de novo* standard for the legal

---

[25] *See Strunk v. United States*, 412 U.S. 434, 440 (1973).

[26] *See Barker*, 407 U.S. at 522.  The Supreme Court expressed its concern about its judicially created remedy for a violation of a defendant's right to a speedy trial:

> The amorphous quality of the right also leads to the unsatisfactorily severe remedy of dismissal of the indictment when the right has been deprived.  This is indeed a serious consequence because it means that a defendant who may be guilty of a serious crime will go free, without having been tried.  Such a remedy is more serious than an exclusionary rule or a reversal for a new trial, but it is the only possible remedy.

*Id.*

[27] *United States v. Ewell*, 383 U.S. 116, 121 (1966).

[28] *See Barker*, 407 U.S. at 534-35 (rejecting defendant's claim of a speedy-trial violation despite a five year delay when the record strongly indicated that the defendant did not actually want a speedy trial).

components."[29]    Review of the individual *Barker* factors necessarily involves fact

determinations and legal conclusions, but "[t]he balancing test as a whole . . . is a purely legal

question."[30]

In *Kelly v. State*,[31] we elaborated on the deference given to a trial judge's resolution

of factual issues in the speedy-trial context. Under the abuse of discretion standard, appellate

courts defer not only to a trial judge's resolution of disputed facts, but also to his right to

draw reasonable inferences from those facts.[32] In assessing the evidence at a speedy-trial

hearing, the trial judge may completely disregard a witness's testimony, based on credibility

and demeanor evaluations, even if that testimony is uncontroverted.[33] The trial judge may

disbelieve any evidence so long as there is a reasonable and articulable basis for doing so.[34]

And all of the evidence must be viewed in the light most favorable to his ultimate ruling.[35]

---

[29] *Zamorano v.* State, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002); *State v. Munoz*, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999) (setting out standard); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997) (reviewing courts should "afford almost total deference to a trial court's determination of the historical facts that the record supports"); *Johnson v. State*, 954 S.W.2d 770, 771 (Tex. Crim. App. 1997) (in reviewing trial courts' decisions on federal constitutional speedy-trial claims, appellate courts may conduct *de novo* review by independently weighing and balancing the four *Barker* factors).

[30] *Zamorano*, 84 S.W.3d at 648 n.19.

[31] 163 S.W.3d 722, 726 (Tex. Crim. App. 2005).

[32] *Id.* at 726-27.

[33] *Id.* at 727 (citing *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000)).

[34] *Kelly*, 163 S.W.3d at 728.

[35] *See Zamorano*, 84 S.W.3d at 648.

## III.

Because appellant lost in the trial court on his speedy-trial claim, we presume that the trial judge resolved any disputed fact issues in the State's favor, and we defer to the implied findings of fact that the record supports.[36] The State takes issue only with the appellate court's review of the third and fourth *Baker* factors– "assertion of the right" and "prejudice." These are also the two factors upon which the defendant bears the initial burden of proof.

### A.     The Third Factor:  Assertion of Right

The nature of the speedy-trial right makes "it impossible to pinpoint a precise time in the process when the right must be asserted or waived, but that fact does not argue for placing the burden of protecting the right solely on defendants."[37] The defendant has no duty to bring himself to trial;[38] that is the State's duty.  But a defendant does have the responsibility to assert his right to a speedy trial.[39] Whether and how a defendant asserts this right is closely related to the other three factors because the strength of his efforts will be shaped by them.[40]  "The more serious the deprivation, the more likely a defendant is to

---

[36] *Id*.

[37] *Barker,* 407 U.S. at 527 (footnotes omitted).

[38] *Id.*

[39] *Id.* at 527-28 ("We think the better rule is that the defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right.").

[40] *Id.* at 531.

complain."[41]  Therefore, the defendant's assertion of his speedy-trial right (or his failure to

assert it) is entitled to strong evidentiary weight in determining whether the defendant is

being deprived of the right.[42]  Filing for a dismissal instead of a speedy trial will generally

weaken a speedy-trial claim because it shows a desire to have no trial instead of a speedy

one.[43]  If a defendant fails to first seek a speedy trial before seeking dismissal of the charges,

he should provide cogent reasons for this failure.  Repeated requests for a speedy trial weigh

heavily in favor of the defendant, while the failure to make such requests supports an

inference that the defendant does not really want a trial, he wants only a dismissal.[44]  Indeed,

the failure to diligently seek a speedy trial supports the hoary lawyer's adage, "Never tried,

never convicted."[45]

Appellant was charged on July 6, 2004, and first asserted his speedy-trial complaint

in a motion to dismiss less than two months later, on August 17, 2004.  At the hearing on the

---

[41] *Id.*

[42] *Id.* at 531-32.

[43] *Zamorano*, 84 S.W.3d at 651 n.40 (citing *Parkerson v. State,* 942 S.W.2d 789, 791 (Tex. App.—Fort Worth 1997, no pet.)).

[44] *Barker*, 407 U.S. at 534-36; *Harris v. State*, 827 S.W.2d 949, 957 (Tex. Crim. App. 1992) ("[A]ppellant's lack of a timely demand for a speedy trial indicates strongly that he did not really want a speedy trial.").

[45] *See Zamorano*, 84 S.W.3d at 657 (Womack, J., dissenting) (noting that "delay normally helps the defendant" who is on bail); *see also Barker*, 407 U.S. at 536 ("[B]arring extraordinary circumstances, we would be reluctant indeed to rule that a defendant was denied this constitutional right on a record that strongly indicates, as does this one, that the defendant did not want a speedy trial.").

motion, the parties focused on what defense counsel did to try to get the case moving forward. Counsel testified that he made several calls to the DA's office and talked to different people about getting the case filed. The trial judge seemed skeptical because counsel had only one note documenting any such attempt–one that, as the judge explained, "doesn't say you talked to the DA's office, it says you talked to the client." The trial court ultimately characterized appellant's evidence on "assertion of the right" as "a little weak."

The court of appeals looked at the time between the filing of the information and appellant's assertion of his right to a speedy trial and noted it was less than two months. It stated that it was "understandable that Cantu first framed his speedy-trial complaint in a motion seeking dismissal" because the State's delay in charging him made it impossible for him to make a speedy-trial complaint in any form for sixteen months after he was arrested.[46] Although one cannot file a motion for a speedy trial until formal charges are made, the right to one can be asserted in other ways.[47] The Supreme Court has held that "invocation of the speedy trial provision . . . need not await indictment, information, or other formal charge."[48]

---

[46] *Cantu*, 2007 Tex. App. LEXIS 2411, at * 10 .

[47] *See State v. Flores*, 951 S.W.2d 134, 142 (Tex. App.—Corpus Christi 1997, no pet.) ("In this case, Flores and his sister inquired about his case several times, even though Flores had no burden to do so since no charges had yet been brought against him"; "These actions indicate that Flores was interested in a speedy resolution of his case, if in fact charges were going to be brought against him."); *State v. Empak*, 889 S.W.2d 618, 624 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd) ("Following Empak's service with summons in August of 1993, Empak promptly demanded a speedy trial in the alternative to its motion to dismiss for the speedy trial violation. Empak could not have been expected to demand a speedy trial prior to being notified of the prosecution by service of summons. This factor favors Empak.").

[48] *Dillingham v. United States*, 423 U.S. 64, 65 (1975).

Because appellant never asked for a speedy trial–he asked only for a dismissal[49]–it was incumbent upon him to show that he had tried to get the case into court so that he could go to trial in a timely manner.

As the Fifth Circuit noted in *United States v. Palmer*,[50] "the point at which the defendant asserts his right is important because it may reflect the seriousness of the personal prejudice he is experiencing."[51]  Because the defendant in *Palmer* "first asserted his right thirty months after his arrest, which was one month after he first received notification of his indictment, and he complained at that time only of the 22-month pre-indictment delay," his "silence during the entire pre-indictment period works against him because it suggests that any hardships he suffered were either minimal or caused by other factors."[52]

Likewise, the present record supports an inference that the trial judge gave little credence to the assertions by appellant's attorney about his attempts to talk to the District Attorney's Office about filing charges more rapidly.  As appellant's counsel admitted, he consciously decided not to prod the prosecution into filing charges before a new DWI law came into effect because he had decided not to enter a guilty plea.  Under *Barker*, appellant's

---

[49] *Phillips v. State*, 650 S.W.2d 396, 401 (Tex. Crim. App. 1983) ("Although a motion to dismiss notifies the State and the court of the speedy trial claim, a defendant's motivation in asking for dismissal rather than a prompt trial is clearly relevant, and may sometimes attenuate the strength of his claim.").

[50] 537 F.2d 1287 (5th Cir. 1976).

[51] *Id.* at 1288.

[52] *Id.*

failure to diligently and vigorously seek a rapid resolution is entitled to "strong evidentiary weight."[53]

An accused in appellant's place–arrested but not formally charged–has a choice: He can wait until he is charged, then file a motion for a speedy trial, and, if this request is not honored, he can then file a motion to dismiss because he has diligently sought what he is entitled to–a speedy trial. Or he can wait until he is charged and simply file a motion to dismiss if he can show that he diligently tried to move the case into court before formal charges were filed.[54] Here, appellant never requested a speedy trial; he sought only an outright dismissal and tried to prove that he acted on the desire for a speedy resolution before he was charged.[55] In the trial judge's eyes, he failed to establish that fact.

Appellant asserts that it is undisputed that defense counsel was in contact with the

---

[53] 407 U.S. at 531-32 ("The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. . . . [F]ailure to assert the right will make it difficult for the defendant to prove that he was denied a speedy trial.").

[54] *See Sinclair v. State*, 894 S.W.2d 437, 440 (Tex. App.—Austin 1995, no pet.) (per curium) ("Appellant's bond obligated her to appear before the 147th District Court. We know of no reason why appellant could not have filed a motion to dismiss the complaint against her in that court, or in the municipal court in which the complaint was filed, before she was indicted. We believe that in four years, an attorney whose client was truly interested in the prompt disposition of the accusations against her would have written more than one letter to the district attorney's office and had more than three conversations with the prosecutors to whom the case was assigned.").

[55] For example, letters to the district attorney's office requesting an expeditious charging decision, coupled with follow-up written reminders of the defendant's desire for a speedy trial and noting the passage of time, would support such a position. *See Sinclair*, 894 S.W.2d at 440 (noting that one such letter was insufficient to show assertion of the right).

district attorney's office on more than one occasion.  He points to his counsel's testimony that he had talked to the DA's office about getting the case filed, only to be told that it was "pending."  And he points to the prosecutor's admission that he had "talked to" defense counsel as confirming that testimony.  The prosecutor did confirm one conversation–which revolved around defense counsel clarifying that his motion was based on the U.S. Constitution rather than the speedy-trial act.  But the prosecutor also noted that defense counsel did not, during that conversation, tell him or Mr. Israel Cano that he had spoken to somebody at the DA's office about getting the case filed back in August of 2003.

The trial court was entitled to disbelieve all or part of defense counsel's testimony about his calls to the DA's office.[56]  The paucity of extrinsic evidence of any such communications suffices to cast doubt.  Thus, the trial judge was entitled to take the testimony about counsel's contacts with the district attorney's office with a grain of salt.  And he did.  His legal conclusion that the "assertion of the right" factor weighed against appellant was based upon his implied factual findings.

## B.    The Fourth Factor:  Prejudice

Because "pretrial delay is often both inevitable and wholly justifiable,"[57] the fourth *Barker* factor examines whether and to what extent the delay has prejudiced the defendant.[58]

---

[56] *Kelly*, 163 S.W.3d at 727-28.

[57] *Doggett v. United States*, 505 U.S. 647, 656 (1992).

[58] *Barker,* 407 U.S. at 532.

When a court analyzes the prejudice to the defendant, it must do so in light of the defendant's interests that the speedy-trial right was designed to protect: (1) to prevent oppressive pretrial incarceration, (2) to minimize the accused's anxiety and concern, and (3) to limit the possibility that the accused's defense will be impaired.[59] Of these types of prejudice, the last is the most serious "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system."[60]

Appellant testified that he was anxious about the case and that he had developed an ulcer. But the trial judge was apparently unpersuaded because he suggested that the ulcer might have been caused by drinking rather than the stress of the case. Not even appellant testified that his ulcer was caused by the pendency of the DWI investigation.

The court of appeals credited appellant's testimony that he suffered "anxiety" because the State did not specifically challenge this testimony. We have previously held that general anxiety "is at least some evidence of the type of 'anxiety' that the Supreme Court considers under the prejudice prong of *Barker*."[61] But evidence of generalized anxiety, though relevant, is not sufficient proof of prejudice under the *Barker* test, especially when it is no greater anxiety or concern beyond the level normally associated with a criminal charge or

---

[59] *Dragoo v. State*, 96 S.W.3d 308, 316 (Tex. Crim. App. 2003) (citing *Barker v. Wingo*, 407 U.S. at 532).

[60] *Id.*

[61] *Zamorano*, 84 S.W.3d at 654.

investigation.[62]

The court of appeals also pointed to the fact that appellant was required to call his bondsman every week, but this was, at worst, a minor inconvenience. Here there was no evidence that appellant lost his job or had his work schedule disrupted–he was a retiree who continued to work as a hunting guide in Mexico and did maintenance work for friends while the case was "missing."

Unlike the situation in *Zamorano*, appellant was not required to make numerous fruitless and costly trips to court;[63] he did not lose wages or time away from his work;[64] he did not long suffer from public opprobrium by a lengthy pendency of formal criminal charges against him;[65] he did not file any requests for a speedy trial that were denied or ignored.[66] By comparison, in *State v. Burckardt*, the court of appeals held that the appellant's evidence of loss of "some potentially exculpatory evidence" and "several thousand dollars in income," was sufficient to demonstrate prejudice.[67] And in *Stock v. State,* prejudice was shown by the

---

[62] *Shaw v. State*, 117 S.W.3d 883, 890 (Tex. Crim. App. 2003).

[63] *Zamorano*, 84 S.W.3d at 650, 654 (noting twenty-two resets of pending case and at least eleven days of missed work due to court appearances).

[64] *Id.* at 654 (noting that defendant day-laborer suffered at least $1,320 in lost wages from making fruitless court appearances).

[65] *Id.* (noting four-year delay while formal charges were pending).

[66] *Id.* (noting that defendant had twice filed motions for a speedy trial, but both times his requests were ignored or denied).

[67] 952 S.W.2d 100, 103 (Tex. App.—San Antonio 1997, no pet.).

defendant's one-year pretrial incarceration, interference with his employment prospects and the burdensome economic costs and inconvenience of traveling back and forth for urinalyses and trial settings.[68] In each of these cases at least one of the factual "major evils protected against by the speedy trial guarantee" mentioned in *United States v. Marion*,[69] was present–disruption in employment or a draining of financial resources. Except for some degree of personal anxiety, such is not the case here.

**C.    Conclusion**

In sum, the evidence in this case fully supports the trial judge's ruling. From this record, one could conclude that appellant did not really want a speedy trial; he wanted only a dismissal of the DWI. The relatively tepid nature of the State's pre-charging delay and official negligence, the tardiness of appellant's assertion of his speedy-trial right, and the lack of any substantial personal or defense prejudice resulting from the State's delay convinces us that the trial court did not err in denying appellant's motion to dismiss.[70] Like the trial judge, we conclude that, as a matter of law, appellant was not denied his Sixth Amendment right to a speedy trial.

---

[68] 214 S.W.3d 761, 766-67 (Tex. App.—Austin 2007, no pet.).

[69] 404 U.S. 307, 320 (1971) ("[T]he major evils protected against by the speedy trial guarantee exist quite apart from actual or possible prejudice to an accused's defense. . . . Arrest is a public act that may seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.").

[70] *See United States v. Palmer*, 537 F.2d 1287, 1289 (5th Cir. 1976).

We therefore reverse the judgment of the court of appeals and affirm the trial court's judgment.

Delivered:  May 7, 2008

Publish