COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  | § |  |
|---|---|---|
| ABRAHAM CHAVEZ, | | No. 08-07-00274-CR |
|  | § | |
| Appellant, | | Appeal from |
|  | § | |
| v. | | 168th District Court |
|  | § | |
| THE STATE OF TEXAS, | | of El Paso County, Texas |
|  | § | |
| Appellee. | | (TC # 20060D05823) |
|  | § | |

## O P I N I O N

Abraham Chavez appeals his conviction of aggravated assault with a deadly weapon.  The trial court revoked Appellant's deferred adjudication community supervision, adjudicated his guilt, and assessed his punishment at imprisonment for a term of three years.  We affirm.

### FACTUAL SUMMARY

On April 5, 2007, Appellant waived his right to a jury trial and entered a negotiated plea of guilty.  The trial court, in accordance with the plea bargain, placed Appellant on deferred adjudication for three years.  After the probation officer, Caroline Martinez, explained the terms of probation to Appellant and as he was being led out of the courtroom by the guards, Appellant gestured to the victim, Rex Waide, by raising his hands while stating, "I'll be out in three years." Waide, who had obtained a protective order against Appellant, testified Appellant had also mouthed words to him, including "son of a bitch."  One of the conditions of community supervision prohibited Appellant from having direct or indirect communication with the victim.  The State filed a motion to adjudicate guilt alleging Appellant had violated this term of community supervision. The State also alleged Appellant had violated the probationary terms by committing the offense of

violation of a protective order by this same conduct. Following a hearing, the trial court found Appellant had violated the terms and conditions of community supervision and adjudicated him guilty. The court assessed his punishment at imprisonment for a term of ten years.

## ADJUDICATION OF GUILT

Appellant raises two issues challenging the trial court's decision to adjudicate his guilt. In Issue One, Appellant contends that because the State failed to prove its allegations that Appellant violated the terms of community supervision, the court abused its discretion by granting the State's motion to adjudicate.

The trial court was authorized to revoke Appellant's deferred adjudication community supervision and adjudicate his guilt on the original charge if the State proved by a preponderance of the evidence that Appellant violated any condition of his community supervision. *See* TEX.CODE CRIM.PROC.ANN. art. 42.12 § 5(b)(Vernon Supp.2008); *Rickels v. State*, 202 S.W.3d 759, 763 (Tex.Crim.App. 2006). We review the trial court's decision to proceed with an adjudication of guilt for an abuse of discretion. *See* TEX.CODE CRIM.PROC.ANN. art. 42.12 § 5(b)(Vernon Supp.2008) (determination to proceed with adjudication of guilt on original charge is reviewable in same manner as order revoking community supervision); *Rickels*, 202 S.W.3d at 763 (order revoking community supervision reviewed for abuse of discretion). The trial court does not abuse its discretion if the order revoking community supervision is supported by a preponderance of the evidence; in other words, the greater weight of the credible evidence would create a reasonable belief that the defendant has violated a condition of his probation. *Rickels*, 202 S.W.3d at 763-64. In conducting our review, we view the evidence in the light most favorable to the trial court's ruling. *Cardona v. State*, 665 S.W.2d 492 (Tex.Crim.App. 1984). We defer to the trial court's resolution of disputed facts and to any reasonable inferences which can be drawn from those facts. *Cantu v. State*, 253 S.W.3d 273,

282 (Tex.Crim.App. 2008).

The motion to adjudicate alleged Appellant violated the terms of probation by communicating with the victim, Rex Waide, in the courtroom. The community supervision order prohibited Appellant from having direct or indirect communication with the victim. The probation officer testified that she explained the terms and conditions of community supervision to Appellant, including the prohibition against communicating directly or indirectly with the victim. After she finished explaining the terms of community supervision to Appellant and he was being led from the courtroom by the guards, Martinez saw Appellant gesturing at the victim by raising his hands. She also heard Appellant muttering, "In three years--I'll be out in three years." It was clear to her that Appellant was communicating with Waide. Waide also testified at the hearing on the State's motion to adjudicate. He had obtained a protective order against Appellant which was in effect at the time of the guilty plea. Although Waide had been instructed to avoid contact with Appellant, one of the attorneys had asked Waide to be present at the guilty plea. Waide remained outside the courtroom until he was called inside. After the sentencing, Waide observed Appellant mouthing vulgar words at him. Waide did not understand some of the words because they were Spanish, but he knew Appellant mouthed the words "son of a bitch." It was clear to Waide that Appellant was communicating with him. Dave Contreras, who represented Appellant in connection with the protective order, testified that Appellant knew and understood the terms of the protective order, including the requirement that he was not supposed to have any contact with or make any remarks to Rex Waide and certain members of Waide's family.

Appellant contends the evidence does not show he was communicating with Waide because it only shows he made "gestures and reactive utterances." This assertion ignores Martinez's testimony that Appellant made the gestures towards the victim while stating he would be out in three

years. Appellant also contends that he could have been directing the words "son of a bitch" toward the prosecutor or himself. Again, Appellant does not take into account Waide's testimony that Appellant was communicating with him. Appellant also asserts that Waide's testimony and Martinez's testimony conflicts because Martinez did not testify Appellant was mouthing words at Waide. It was the trial court's task as the factfinder to assess the credibility of these witnesses and resolve the conflicts in the evidence. When the evidence is viewed in the light most favorable to the court's finding, it is sufficient to prove by a preponderance of the evidence that Appellant communicated with the victim in violation of the terms and conditions of community supervision. Because the evidence is sufficient to support one of the two alleged violations, the trial court did not abuse its discretion by granting the State's motion and adjudicating Appellant guilty of aggravated assault with a deadly weapon. Issue One is overruled.

In Issue Two, Appellant contends that the trial court abused its discretion by granting the State's motion to adjudicate guilt because he had not been released from confinement, and therefore, was not subject to the terms and conditions of community supervision. A defendant's probation cannot be revoked based on acts occurring before he was placed on probation. *Ex parte Moffett*, 542 S.W.2d 184, 186 (Tex.Crim.App. 1976). When no appeal is taken, the terms of probation begin on the day of sentencing. *Morris v. State*, 658 S.W.2d 770, 773 (Tex.App.--Beaumont 1983, no pet.).

Appellant directs us to *Stultz v. State*, 92 Ark.App. 204, 212 S.W.3d 42 (2005) in support of his argument. There, the defendant pled guilty on March 24, 2004 to conspiracy to deliver methamphetamine, but she was not sentenced until March 31, 2004. The court sentenced her to three years in prison with an additional seven-year suspended sentence to begin after she completed the prison term. *Id.* at 209. Under Arkansas law, the suspended sentence would not commence until after the prison sentence had been served. *Id.* After the entry of the guilty plea, the State filed a

petition to revoke the suspended sentences on the ground that Stultz violated her conditions by committing several new criminal offenses on the day of sentencing. The trial court revoked Stultz's probation and sentenced her to a twenty year term of imprisonment. The Arkansas appellate court held that the trial court lacked authority to revoke the suspended sentence because it had not yet commenced when Stultz committed the new offenses. *Id.*

Of course, *Stultz* is not binding upon us. Moreover, it is distinguishable on its facts because Appellant was not sentenced to a prison term to be followed by a suspended sentence. Appellant has not cited any Texas authority standing for the proposition that the terms of probation do not become effective until after he has been processed through the jail and formally released from confinement. In fact, Texas law is contrary to his position. The period of community supervision begins on the day of sentencing because the defendant suffers restrictions upon his freedom that day. *Nesbit v. State*, 227 S.W.3d 64, 65 (Tex.Crim.App. 2007). It is undisputed that the trial court orally pronounced sentence placing Appellant on deferred adjudication community supervision on April 5, 2007. That same date, the trial court signed the order establishing the terms and conditions of community supervision and the probation officer reviewed those terms and conditions with Appellant in the courtroom after the guilty plea. Appellant signed below the judge's signature indicating he had received the terms and conditions, they had been explained to him, and he understood them. We conclude that Appellant's probationary term had commenced when he committed the acts forming the basis for adjudication of guilt. We overrule Issue Two and affirm the judgment of the trial court.

December 9, 2009

ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, J., and Gomez, Judge
Gomez, Judge, sitting by assignment

(Do Not Publish)