

# IN THE
# TENTH COURT OF APPEALS

## No. 10-11-00326-CR

**MARK AUSTIN PURCELL,**

                                                                        **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                                        **Appellee**

From the 85th District Court
Brazos County, Texas
Trial Court No. 08-03181-CRF-85

## MEMORANDUM OPINION

In this appeal, appellant, Mark Austin Purcell, argues that, after revoking his community supervision, the trial court abused its discretion by imposing the sentence originally assessed—two years' confinement in a State-Jail Facility. We affirm.

### I.     BACKGROUND

On November 21, 2008, Purcell pleaded guilty to the offense of unlawful possession of marihuana in an amount greater than four ounces but less than five pounds pursuant to a plea-bargain agreement with the State. *See* TEX. HEALTH & SAFETY

CODE ANN. § 481.121(a), (b)(3) (West 2010).[1] The trial court accepted Purcell's guilty plea, sentenced him to two years' confinement in a State-Jail Facility, suspended the sentence, and placed him on community supervision for three years. Further, as conditions of his community supervision, Purcell was required to, among other things: (1) abstain from consuming controlled substances and dangerous drugs; (2) not violate any laws of the State of Texas; (3) pay various court-ordered fees; (4) submit to regular drug testing; and (5) enroll in and complete a State-mandated and approved education program for drug offenders within 180 days of the trial court's order granting community supervision.

Apparently, Purcell violated several of the conditions of his community supervision, and the State sought to modify the terms of his community supervision. On October 28, 2010, Purcell signed a waiver of hearing on the State's motion to modify the conditions of his community supervision, wherein he admitted to using methamphetamine on four different occasions, failing to pay various court-ordered fees, and failing to successfully complete a drug-offender education program within 180 days of the trial court's order granting community supervision. The trial court subsequently modified the conditions of Purcell's community supervision to: (1) order him to enroll in and successfully complete the Brazos County Drug Court Program; (2)

---

[1] Under section 481.121(b)(3) of the Texas Health and Safety Code, the underlying offense is a state-jail felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121(b)(3) (West 2010). The corresponding punishment range is "confinement in a state jail for any term of not more than two years or less than 180 days" and a possible fine "not to exceed $10,000." TEX. PENAL CODE ANN. § 12.35(a)-(b) (West Supp. 2011).

imposed a curfew; and (3) extend his community supervision an additional year to November 20, 2011.[2]

Despite these modifications, Purcell continued to violate the conditions of his community supervision. Bobby Baker, a caseworker with Brazos County Adult Supervision, testified and the State alleged in its motion to revoke Purcell's community supervision that Purcell: (1) failed to attend drug-court meetings despite being instructed that he should attend all meetings; (2) failed to pay various court-ordered fees; (3) failed to participate in a drug-offender education program; (4) failed to provide documentation that he attended a required "12-step" program and obtained a "12-step" sponsor during the course of his community supervision; (5) failed to complete the Brazos County Drug Court Program; (6) used methamphetamine on more than one occasion; and (7) possessed a "Whizzinator."[3]

On August 12, 2011, the trial court conducted a hearing on the State's motion to revoke. Rather than contest the allegations contained within the State's motion, Purcell pleaded "true" to the allegations, even though the trial court admonished him about the potential consequences of such a plea. The hearing resumed, and Baker testified that he was Purcell's caseworker when Purcell was ordered to participate in the Brazos County Drug Court Program. Baker noted that Purcell was highly educated—a college graduate of Texas A&M University—and recounted Purcell's numerous violations of

---

[2] Due to additional violations, the conditions of Purcell's community supervision were further modified at later dates to include orders for temporary incarceration in the Brazos County Jail.

[3] Baker described Purcell's "Whizzinator" as "a device that the individual uses to provide fake urine to pass a drug test."

his community supervision. Baker explained that Purcell had "a real bad attitude in the program" because "he didn't think he need[ed] the program." Baker recalled that Purcell told him that the positive drug tests were caused by Adderall, an amphetamine he took for narcolepsy.[4] Baker also testified that Purcell indicated that he received the "Whizzinator" from a friend and that when he was caught with it, he was "just trying it on."

Jonathan Dille, a jailer for the Brazos County Sheriff's Department, testified that he conducted a strip search of Purcell when he was taken into custody on January 12, 2011. During the course of the search, Dille discovered that Purcell was wearing the "Whizzinator" device and that the device was attached to a bag full of a "yellowish fluid," which police believed to be urine. When Dille discovered the "Whizzinator," Purcell exclaimed, "Well, I'm fucked again. I'm in trouble again." Once Dille completed the search, Purcell asked, "Can we leave it at this?" Dille informed Purcell that a report would be written and that his supervisor would have to be notified about the "Whizzinator."

Michael Currie, a Sergeant with the Brazos County Sheriff's Department, recalled Dille showing him the "Whizzinator" that was taken from Purcell. Sergeant Currie subsequently interviewed Purcell after Purcell waived his *Miranda* rights. Purcell explained to Sergeant Currie that he put the "Whizzinator" on thirty minutes prior to a drug-court meeting; that he wore the device during the meeting; and that he

---

[4] Baker explained that amphetamine and methamphetamine are two different substances; that Purcell admitted to using methamphetamine; and that the positive drug tests for methamphetamine were confirmed by a laboratory to be caused by an illegal substance, not Adderall.

had forgotten to take it off.  Sergeant Currie also stated that the bag attached to the "Whizzinator" contained a "yellowish liquid," which he assumed was somebody's urine.

Purcell called several witnesses to testify on his behalf, including his college roommate, Glen Streater, and a former co-worker, Herbert Willett.  Streater stated that he and Purcell has been friends for many years and that he saw a great change in Purcell's behavior after a serious motorcycle accident in 2005, which resulted in Purcell having one of his legs amputated.  Streater was not aware that Purcell was abusing drugs, and he believed Purcell to be a law-abiding citizen who could be a productive member of the community.  Willett testified that he had known Purcell for eight years and that Purcell became disillusioned with the community-supervision process to the point that he did not believe that the community-supervision process could help him or that he could comply with its conditions.

Purcell testified on his own behalf, wherein he admitted to having been previously incarcerated in the Texas Department of Criminal Justice twenty-seven years ago for an offense involving methamphetamine.  Purcell noted that he successfully completed parole in that case.  He also admitted that he was arrested and convicted for unlawful possession of marihuana in 1976.  With regard to the "Whizzinator," Purcell explained that he intended to take Zoloft for depression; that he was concerned that the medication would cause him to have a dirty drug test; that he forgot to take it off prior to the drug-court meeting; and that a friend gave him the device.  Purcell later denied ever taking Zoloft, claimed that he did not know the origin of the urine in the bag

attached to the device, and refused to reveal the identity of the friend who allegedly gave him the "Whizzinator."[5]   Purcell characterized his decision to wear the "Whizzinator" as a "stupid—stupid lapse on my part."   Further, when asked by the State whether he told a probation officer that he thought Adderall would mask methamphetamine, Purcell responded:

> I did—I—might have told her that I was surprised that it came up positive for methamphetamine because I was taking Adderall.   I did—I don't believe that that's the right phrasing.   No, it's not what I said or how I said it.   No.   But I can see how it would be construed as that.

And finally, Purcell blamed his failure to attend drug-court meetings and drug-offender-treatment program meetings on his inability to be punctual and his failure to pay court-ordered fees due to lack of money.

At the conclusion of the evidence, the trial court found the allegations contained in the State's motion to revoke to be true, revoked Purcell's community supervision, and sentenced him to two years' confinement in a State-Jail Facility.   This appeal ensued.

## II.   STANDARD OF REVIEW

We review a trial court's decision to revoke a defendant's community supervision under an abuse of discretion standard.   *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006).   The State's burden of proof is by a preponderance of the evidence, and proof of a single violation of community supervision is sufficient to support revocation.   *Id.* at 763-64; *see Smith v. State*, 286 S.W.3d 333, 342 (Tex. Crim. App.

---

[5] Baker testified that he researched the "Whizzinator," including how one could be obtained.   He found that one could be purchased for $100 to $200.

2009). The State meets its burden when the greater weight of the credible evidence creates a reasonable belief that the defendant violated a condition of community supervision as alleged. *See Rickels*, 202 S.W.3d at 764; *see also Jenkins v. State*, 740 S.W.2d 435, 437 (Tex. Crim. App. 1983).

In a hearing on a motion to revoke community supervision, the trial court is the sole trier of fact and is also the judge of the credibility of the witnesses and the weight to be given to their testimony. *Taylor v. State*, 604 S.W.2d 175, 179 (Tex. Crim. App. 1980); *see Trevino v. State*, 218 S.W.3d 234, 240 (Tex. App.—Houston [14th Dist.] 2007, no pet.). Moreover, on appeal, we examine the evidence in the light most favorable to the trial court's ruling. *See Cantu v. State*, 253 S.W.3d 273, 282 (Tex. Crim. App. 2008) (stating that the reviewing court is to defer to the trial court's resolution of disputed facts and reasonable inferences that can be drawn from those facts); *Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. [Panel Op.] 1981); *Duncan v. State*, 321 S.W.3d 53, 57 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd); *see also Pinon v. State*, No. 12-10-00400-CR, 2011 Tex. App. LEXIS 7332, at *3 (Tex. App.—Tyler Sept. 7, 2011, no pet.) (mem. op., not designated for publication).

## III. ANALYSIS

In his sole issue on appeal, Purcell argues that, after revoking his community supervision, the trial court abused its discretion by imposing the sentence originally assessed. Specifically, Purcell contends that his best interest and the best interest of society would be better served with a reduced sentence. In making this argument, Purcell relies heavily on article 42.12, section 23(a) of the Texas Code of Criminal

Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 23(a) (West Supp. 2011). Article 42.12, section 23(a) of the Texas Code of Criminal Procedure provides the following, in pertinent part:

> If community supervision is revoked after a hearing under Section 21 of this article, the judge may proceed to dispose of the case as if there had been no community supervision, or if the judge determines that the best interests of society and the defendant would be served by a shorter term of confinement, reduce the term of confinement originally assessed to any term of confinement not less than the minimum prescribed for the offense of which the defendant was convicted.

*Id.* Purcell asserts that the evidence supported a reduction in the two-year sentence because: (1) many of the violations alleged had previously been punished by sanctions imposed by the trial court; (2) the trial court mentioned that there was no need to protect a victim in this case; (3) he did not commit an offense while he was on community supervision; (4) he did not abuse a controlled substance while on probation; and (5) when he is released, he will have no home and income and will have to start over.

We agree that article 42.12, section 23 of the Texas Code of Criminal Procedure vests the trial court with the authority and discretion to revoke an individual's community supervision and assess punishment as if there had been no community supervision. *See id.*; *Guzman v. State*, 923 S.W.2d 792, 799 (Tex. App.—Corpus Christi 1996, no pet.); *see also Borchick v. State*, No. 10-08-00409-CR, 2009 Tex. App. LEXIS 5842, at *3 (Tex. App.—Waco July 29, 2009, no pet.) (mem. op., not designated for publication). Furthermore, the trial court does not abuse its discretion by imposing the sentence originally assessed. *See Guzman*, 923 S.W.2d at 799 ("The Code of Criminal

Procedure provides that if community supervision is revoked after a hearing under Section 21 of this article, the judge may proceed to dispose of the case as if there had been no community supervision. . . . In other words, the judge may impose the sentence originally assessed.") (internal quotations omitted); *see also Borchick*, 2009 Tex. App. LEXIS 5842, at \*\*3-4 (citing *Mendoza v. State*, No. 04-06-00135-CR, 2006 Tex. App. LEXIS 7948, at \*3 (Tex. App.—San Antonio Sept. 6, 2006, no pet.) (mem. op., not designated for publication); *May v. State*, No. 07-03-00420-CR, 2005 Tex. App. LEXIS 5772, at \*\*2-3 (Tex. App.—Amarillo July 25, 2005, no pet.) (mem. op., not designated for publication) ("So, because appellant at bar was originally sentenced to a ten-year prison term, the trial court did not abuse its discretion in assessing a like term upon revoking his probation. In short, we refuse to hold that the trial court abused its discretion in doing that allowed by statute.").

Here, Purcell judicially confessed to the allegations contained in the State's motion to revoke pertaining to numerous violations of his community supervision, and the record indicates that Purcell never fully complied with the terms of his community supervision, though he agreed to do so pursuant to the plea-bargain agreement with the State. *See Rickels*, 202 S.W.3d at 763-64 (holding that proof of a single violation of community supervision is sufficient to support revocation); *see also Smith*, 286 S.W.3d at 342 (same). Based on the record before us and examining the evidence in the light most favorable to the trial court's ruling, we do not believe that Purcell has demonstrated that the trial court abused its discretion by imposing the sentence originally assessed. *See Cantu*, 253 S.W.3d at 282; *see also Jackson v. State*, 680 S.W.2d 809, 814 (Tex. Crim.

App. 1984) (stating that the amount of punishment to impose lies within the trial court's discretion and that the sentence will not be disturbed on appeal if it is within the proper range of punishment). Like the *May* court, "we refuse to hold that the trial court abused its discretion in doing that allowed by statute." *May*, 2005 Tex. App. LEXIS 5772, at *3; *see Guzman*, 923 S.W.2d at 799. Accordingly, Purcell's sole issue is overruled.

## IV. CONCLUSION

Having overruled Purcell's sole issue on appeal, we affirm the judgment of the trial court.


AL SCOGGINS
Justice


Before Chief Justice Gray,
    Justice Davis, and
    Justice Scoggins
Affirmed
Opinion delivered and filed May 16, 2012
Do not publish
[CR25]