**Opinion filed August 23, 2012**



# In The

# Eleventh Court of Appeals

_____

## No. 11-11-00052-CR

_____

## BENJAMIN FRANK GOEBLER, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the County Court of Law**

**Brown County, Texas**

**Trial Court Cause No. 0800267**

## M E M O R A N D U M   O P I N I O N

Benjamin Frank Goebler entered a plea of "no contest" to the offense of driving while intoxicated, second offense. The trial court assessed his punishment at confinement in the Brown County Jail for a term of one-year and a fine of $500. However, the trial court probated the imposition of confinement for a period of two years by placing appellant on community supervision. Appellant challenges his conviction in a single issue. He contends that the trial court erred in denying his motion to dismiss on speedy trial grounds. We affirm.

### Background Facts

The complaint and information alleged that appellant committed the charged offense on or about March 6, 2008. The case was filed on April 11, 2008. The court set the case for

arraignment on November 24, 2008.[1] However, appellant did not appear on that date. The trial court issued a warrant for appellant's arrest based on his failure to appear. The trial court subsequently withdrew the warrant when the court received notice that appellant was in a rehabilitation facility in Houston. An assistant district attorney initially notified the trial court of appellant's status and she requested that the case be reset for ninety days. The trial court subsequently received a letter from an entity known as "DAPA," a psychiatric and substance abuse program in Houston. The letter advised the trial court that appellant had been admitted on November 18, 2008, into DAPA's partial hospital program to treat his bipolar disorder and alcohol dependence.[2]

Nothing further happened in the case until November 2010. Brenda Sue Arp, the trial court's administrator, testified that she did not set the case earlier because she was waiting for more information about appellant's release from DAPA. She set the case for a status conference on November 3, 2010, when she received notice that appellant had been released from DAPA. The trial court subsequently set the case for jury trial on January 31, 2011. Appellant filed his motion to dismiss on speedy trial grounds on January 14, 2011. The trial court heard the motion on January 27, 2011. Appellant entered his no contest plea on that date after the trial court denied the motion to dismiss.

*Analysis*

Appellant premised his motion to dismiss on speedy trial grounds under the Federal Constitution. The Sixth Amendment to the United States Constitution guarantees the accused's right to a speedy trial. *Zamorano v. State*, 84 S.W.3d 643, 647 (Tex. Crim. App. 2002); *see* U.S. CONST. amend. VI. We use a bifurcated standard of review when reviewing the trial court's ruling on a speedy trial motion. *Cantu v. State*, 253 S.W.3d 273, 282 (Tex. Crim. App. 2008). We apply "an abuse of discretion standard for factual components, and a *de novo* standard for the legal components." *Id.* The trial court's ruling will be affirmed only if it is supported by the record and is correct under the applicable law. *Shaw v. State*, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003). When, as in this case, the trial court does not make written findings of fact and conclusions of law, findings supported by evidence will be implied in favor

---

[1]The trial court had initially set the case for arraignment on July 28, 2008. However, the court administrator was unable to determine from the court's records why the arraignment did not occur on that date.

[2]The letter from DAPA also advised the court that appellant had previously been admitted to the facility from July 2, 2008, to September 27, 2008, and from September 30, 2008, to October 21, 2008.

2

of the trial court's ruling, and we must defer to such findings. *See State v. Munoz*, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999).

In determining whether a defendant was denied his right to a speedy trial, we consider four factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's effort to obtain a speedy trial; and (4) the prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). No single factor is necessary or sufficient to establish a violation of the defendant's right to a speedy trial. *Barker*, 407 U.S. at 533; *Shaw*, 117 S.W.3d at 889. The length of the delay is a triggering mechanism for a speedy trial analysis; absent a presumptively prejudicial delay, we need not consider the other *Barker* factors. *Munoz*, 991 S.W.2d at 820.

Dismissal of the charging instrument with prejudice is mandated only upon a finding that an accused's Sixth Amendment speedy-trial right was actually violated. *Cantu*, 253 S.W.3d at 281. Because dismissal of the charges is a radical remedy, a wooden application of the *Barker* factors would infringe upon the societal interest in trying people accused of crime, rather than granting them immunization because of legal error. *Id.* (quoting *United States v. Ewell*, 383 U.S. 116, 121 (1966)). Therefore, we must apply the *Barker* balancing test with common sense and sensitivity to ensure that charges are dismissed only when the evidence shows that a defendant's actual and asserted interest in a speedy trial has been infringed. *Id.*; *see Barker*, 407 U.S. at 534–35. "The constitutional right is that of a speedy trial, not dismissal of the charges." *Cantu*, 253 S.W.3d at 281.

*Length of the Delay*

At a minimum, there was a delay of over twenty months from the time that the arraignment was reset in November 2008 until the case was set in September 2010 for a status conference on November 3, 2010. We conclude that a delay of this length triggers the presumption of prejudicial delay and requires an analysis of the remaining *Barker* factors. *See id.*

*Reasons for the Delay*

When a court considers the reasons offered to justify a delay, different weights must be assigned to different reasons. *Shaw*, 117 S.W.3d at 889 (citing *Barker*, 407 U.S. at 531). Some reasons are valid and serve to justify the delay, while other reasons are not valid and do not serve to justify the delay. *Id.* A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the State, while a more neutral reason such as negligence or overcrowded courts should be weighted less heavily. *Barker*, 407 U.S. at 531.

Other reasons, such as missing witnesses, may justify appropriate delay. *Id.* Delay which is attributable in whole or in part to the defendant may even constitute a waiver of a speedy trial claim. *Munoz*, 991 S.W.2d at 822.

The court administrator testified that she essentially put the case on hold while waiting to receive word of appellant's release from the DAPA facility. She relied upon appellant and his mother to provide her with this information.[3] Afterwards, the case essentially "fell through the cracks" because no one initiated efforts to determine appellant's status with DAPA for several months. Thus, the record reflects that the reasons for the delay in this case are not attributable to the State. Instead, the delay began as a result of appellant's efforts to be excused from court appearances while in rehab. Accordingly, the "reason for the delay" factor does not weigh against the State. *See Barker*, 407 U.S. at 531.

*Defendant's Efforts to Obtain a Speedy Trial*

A defendant has no duty to bring himself to trial because the primary burden rests upon the courts and the prosecution to insure that cases are brought to trial. *Barker*, 407 U.S. at 527. However, a defendant is not without any responsibility to assert his right. *Id.* at 528. The failure of a defendant to assert his right to a speedy trial will make it difficult to prove that he was denied a speedy trial. *Id.* at 532. The longer the delay, the more likely it is that a defendant who wanted a speedy trial would take some action to obtain one. *Id.* at 531. A defendant who seeks a dismissal instead of a speedy trial weakens his case because it shows a desire for no trial rather than a speedy trial. *Zamorano v. State*, 84 S.W.3d at 651 n.40; *State v. Jones*, 168 S.W.3d 339, 348 (Tex. App.—Dallas 2005, pet. ref'd).

Appellant and his mother testified that they had contacted Brown County officials after he was released from the DAPA program to determine the status of the case. However, they did not provide many specifics about these conversations regarding the dates of the calls or with whom they spoke. Neither of them testified of informing the trial court in writing of appellant's change in status after seeking to be excused from appearing in court. Furthermore, appellant did not file a motion for a speedy trial. Instead, he filed a motion to dismiss on speedy trial grounds approximately two weeks prior to trial. Accordingly, we conclude this factor weighs against appellant.

---

[3]Appellant's mother testified that he remained in the DAPA facility for a full year.

*Prejudice to the Defendant*

Prejudice to a defendant should be assessed in light of the interests the speedy trial right was designed to protect, i.e., preventing oppressive pretrial incarceration, minimizing anxiety and concern of the accused, and limiting the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532. The most serious of these interests is the possibility of impairment to the defense because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. *Id.* The defendant has the initial burden of showing some prejudice, although showing actual prejudice is not required. *Munoz*, 991 S.W.2d at 826. When the defendant makes a prima facie showing of prejudice, the burden shifts to the State to show the defendant suffered no serious prejudice beyond that which ensued from the ordinary and inevitable delay. *Id.*

Appellant asserted that he was prejudiced by the delay because he was concerned about what might happen with the charge. He further testified that he was anxious about the charge. He based his concerns on a head injury that he had previously suffered and on his limited financial resources. He also testified that he did not remember being arrested. We conclude that any prejudice suffered by appellant by the delay is equivocal at best. While appellant's testimony that he could not remember being arrested indicates an impairment of his defense at trial, he attributed the memory loss to a preexisting head injury that likely would have impaired his memory had the trial occurred sooner. With respect to his concern about the charges, the evidence does not establish concern and anxiety attributable to the delay apart from the concern that a person charged with a serious offense would normally experience.

*Conclusion*

Weighing in favor of finding a violation of appellant's speedy trial right is the fact of a lengthy delay. However, the cause of the delay was not attributable to the State. Appellant's lack of effort to obtain a speedy trial is a factor that weighs against him, and any prejudice that appellant suffered from the delay is not clear. Applying a de novo standard of review to the legal components of appellant's claim, we conclude that the combined weight of the four *Barker* factors shows that his right to a speedy trial was not violated. Appellant's sole issue is overruled.

5

*This Court's Ruling*

The judgment of the trial court is affirmed.


TERRY McCALL

JUSTICE


August 23, 2012

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.