COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| THE STATE OF TEXAS, | | No. 08-10-00311-CR |
| | § | |
| Appellant, | § | Appeal from the |
| | § | |
| v. | | 144th Judicial District Court |
| | § | |
| JUSTIN COX, | | of Bexar County, Texas |
| | § | |
| Appellee. | | (TC# 2010-CR-0949) |
| | § | |

**O P I N I O N**

In one issue, the State of Texas appeals the trial court's dismissal of its case on grounds that Appellee Justin Cox' right to a speedy trial was violated.[1]   We affirm.

**BACKGROUND**

On January 18, 2008, Justin Cox was arrested and charged with assault causing bodily injury to a public servant in violation of section 22.01(a)(1)-(b)(1) of the Texas Penal Code.   Cox applied for court-appointed counsel on January 22, 2008, and on February 18, 2008, attorney Victor Gomez was appointed to represent him.   Cox was indicted for the aforementioned offense on April 2, 2008, in Cause Number 2008-CR-2620, and charged with, *inter alia,* intentionally, knowingly and recklessly causing bodily injury to E. Bailey by biting E. Bailey, knowing that E. Bailey was a peace officer and that E. Bailey was lawfully discharging his duties as a peace officer at the time of the offense.   The indictment also alleged that Cox had previously been convicted of

---

[1]  This cause was transferred from the Fourth Court of Appeals to this Court pursuant to a docket equalization order entered by the Texas Supreme Court.   *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005).   We have applied precedent of the San Antonio Court of Appeals.   *See* TEX. R. APP. P. 41.3.

the felony offense of burglary of a habitation. Arraignment was scheduled for April 4, 2008.

On April 18, 2008, and again on September 19, 2008, Cox filed *pro se* Motions to Dismiss Appointed Counsel. On May 1, 2008, Cox filed a *pro se* form Motion for Speedy Trial. On November 13, 2008, attorney Victor Gomez filed a Motion to Withdraw as Counsel which the trial court granted.

Fifty-three days passed before attorney Sandra Casias was appointed to represent Cox on January 5, 2009. The case was set for trial on February 9, 2009, and while both parties announced ready, the case was again re-set. On April 13, 2009, the State re-indicted the case as Cause Number 2009-CR-4203. The new indictment included an alternative manner and means by which to prove the assault on a peace officer and a second count alleging retaliation against Herb Quiel.[2]

Attorney Sandra Casias filed a Motion to Withdraw as Counsel on May 9, 2009, and the trial court granted the motion on May 12, 2009. The following day, attorney Michael Hoyle was appointed to represent Cox. The case was called for trial on June 15, 2009, at which time Mr. Hoyle announced not ready, stating that he had not had sufficient time to prepare for trial.

On September 22, 2009, Mr. Hoyle, on Cox's behalf, filed a Motion to Dismiss for Failure to Afford a Constitutional Right of Speedy Trial. That same day, Mr. Hoyle also filed a Motion to Quash the Indictment alleging inadequate notice of the second count of the indictment because it failed "to allege what unlawful act the defendant is supposed to have committed in retaliation for the service of the prospective witness." Following a hearing, the trial court granted the Motion to Quash which resulted in the removal of Count II of the indictment.

At a pretrial motions hearing on January 12, 2010, the trial court took up, *inter alia,* Cox's

---

[2] The State also filed a Motion to Dismiss Cause Number 2008-CR-2620.

speedy trial motion which he filed *pro se* on May 1, 2008, and through his counsel on September 22, 2009. The trial court denied Cox's speedy trial motion because the case was scheduled for trial the next day.

On January 13, 2010, the case was again called and trial commenced. The trial court granted a directed verdict as to paragraph B of the indictment which alleged assault against a public servant causing bodily injury. On January 15, 2010, the trial court declared a mistrial because the jury was unable to reach a verdict.

The cause was again re-indicted on February 3, 2010, as Cause Number 2010-CR-0949 and this time it contained three counts: (1) assault on a public servant causing bodily injury; (2) retaliation against Ezra Bailey; and (3) retaliation against Herb Quiel. On March 29, 2010, the case was called for trial and both parties announced not ready. On June 7, 2010, the case was again called for trial. The State and Cox announced ready for trial, but the cause was re-set. Finally, on August 24, 2010, Cox argued his speedy trial motion and the trial court granted the motion and dismissed the case.

The trial court entered its Findings of Fact and Conclusions of Law regarding Cox's speedy trial motion on October 4, 2010. The State timely appealed the dismissal of its case.

**STANDARD OF REVIEW**

The Sixth Amendment to the Constitution of the United States provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." U.S. CONST. amend. VI. *See also* TEX. CODE CRIM. PROC. ANN. art. 1.05 (West 2005). The right to a speedy trial is fundamental and is applicable to the states through the Due Process Clause of the Fourteenth Amendment. *See Klopfer v. North Carolina,* 386 U.S. 213 (1967).

3

In *Barker v. Wingo*, the United States Supreme Court established four factors to be considered when analyzing a speedy-trial claim. *Barker v. Wingo,* 407 U.S. 514, 530 (1972); *see also Cantu v. State,* 253 S.W.3d 273, 280 (Tex.Crim.App. 2008). They are: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. *Barker,* 407 U.S. at 530; *Cantu,* 253 S.W.3d at 280. No single factor is necessary or sufficient to establish a violation of the right to a speedy trial; "[r]ather, they are related factors and must be considered together . . . ." *Barker,* 407 U.S. at 533. In conducting this balancing test, we weigh "the conduct of both the prosecution and the defendant . . . ." *Id.* at 530.

"While the State has the burden of justifying the length of delay, the defendant has the burden of proving the assertion of the right and showing prejudice." *Cantu,* 253 S.W.3d at 280. "The defendant's burden of proof on the latter two factors 'varies inversely' with the State's degree of culpability for the delay." *Id.* "Thus, the greater the State's bad faith or official negligence and the longer its actions delay a trial, the less a defendant must show actual prejudice or prove diligence in asserting his right to a speedy trial." *Id.* at 280–81.

In an appeal of a trial court's ruling on a speedy-trial claim, we apply an abuse of discretion standard to the trial court's resolution of factual issues. *Id*. at 282. But, when reviewing the trial court's legal conclusions, we apply a *de novo* standard. *Id.* A review of the four *Barker v. Wingo* factors necessarily involves factual determinations and legal conclusions, but the balancing of the four factors as a whole is a purely legal question. *Id.*

Under the abuse of discretion standard applicable to factual issues, we defer not only to a trial court's resolution of disputed facts, but also to the trial court's right to draw reasonable inferences from those facts. *Id.* "In assessing the evidence at a speedy-trial hearing, the trial

4

judge may completely disregard a witness's testimony, based on credibility and demeanor evaluations, even if that testimony is uncontroverted." *Id.* "The trial judge may disbelieve any evidence so long as there is a reasonable and articulable basis for doing so[,][a]nd all of the evidence must be viewed in the light most favorable to [the trial court's] ultimate ruling." *Id.* Because the State lost in the trial court on Cox's speedy-trial claim, we presume that the trial judge resolved any disputed fact issues in Cox's favor, and we defer to the implied findings of fact supported by the record. *Id.*

### Analysis of the four *Barker v. Wingo Factors*

#### A. Length of Delay

The length of delay is the "triggering mechanism" for an analysis of the remaining three factors and is measured from the date the defendant is arrested or formally accused. *Cantu,* 253 S.W.3d at 281. The balancing test is "triggered by a delay that is unreasonable enough to be 'presumptively prejudicial.'" *Id.* "There is no set time element that triggers the analysis, but . . . a delay of four months is not sufficient while a seventeen-month delay is." *Id.*

Cox was arrested on January 18, 2008, and his first trial commenced on January 13, 2010. This two-year delay is sufficient to trigger a speedy trial analysis. *See id.* Cox's trial ended when the trial court declared a mistrial because the jury was unable to reach a verdict. The case was again called for trial on June 7, 2010, but was re-set. The trial court heard Cox's speedy trial motion on August 24, 2010. If the prior two-year delay was not enough to trigger a speedy trial analysis, then an approximate thirty-three month delay is certainly sufficient. *Id.*

Because Cox asserted his speedy trial rights both prior and subsequent to the trial on the second indictment, we do not find persuasive the State's argument that the length of the delay in

5

this case should be calculated from the date the trial court declared a mistrial rather than from the date of Cox's arrest. *See id.* The trial court was correct in determining that the length of the delay in this case was presumptively prejudicial. *Id.*

### B. Reason for the Delay

Once it is determined that a presumptively prejudicial delay has occurred, the State bears the burden of justifying the delay. *Id.* at 280. Intentional prosecutorial delay weighs heavily against the State, while more neutral reasons, including negligence or overcrowded dockets, weigh less heavily. *Zamorano v. State,* 84 S.W.3d 643, 649 (Tex.Crim.App. 2002) (quoting *Barker,* 407 U.S. at 531). "In the absence of an assigned reason for the delay, a court may presume neither a deliberate attempt on the part of the State to prejudice the defense nor a valid reason for the delay." *Dragoo v. State,* 96 S.W.3d 308, 314 (Tex.Crim.App. 2003).

Here, the record establishes that Cox was indicted for assault causing bodily injury to a public servant on April 2, 2008, some 70-plus days following his arrest. He was re-indicted for the same offense on April 13, 2009. The new indictment included an alternative means and manner by which the assault causing bodily injury to a peace officer might be proved and a second count alleging retaliation against another individual. Subsequent to a mistrial, Cox was again re-indicted for the same offense on February 3, 2010. This latest indictment included two counts of retaliation against Ezra Bailey and Herb Quiel respectively, as well as the original charge of assault causing bodily injury to a peace officer. As previously noted, Cox first went to trial on January 13, 2010. Cox argues that the re-indictments were intentional acts by the State and that therefore this factor should weigh heavily against the State.

6

In its Findings of Fact and Conclusions of Law, the trial court found that prior to the commencement of trial on January 13, 2010, the State was aware that the pending indictment was "incorrect at this time and did not attempt to correct it prior to trial." The trial court also made the following pertinent findings of fact:

*          *          *

22. The Court finds that the added allegations in the re-indictments were based on facts that were available from the date of its initial indictment.

23. The Court finds that the additional allegations charged in the re-indictments caused deliberate and unreasonable delays in the proceedings, thereby compelling the defendant to request additional time to prepare another defense.

24. The Court finds that the State was aware of the problems in the indictment in September of 2009 and chose to ignore the problem until the day of trial which caused further delays in the case.

25. The Court further finds that the defense was prejudiced by not being able to locate the witness, Dr. Paul Freemyer, treating physician to the complainant, subpoenaed by the defense counsel. Dr. Freemyer made a notation in the medical records that said, "bite mark, question." The Court finds that the witness is essential to the defendant's case against the allegation of biting. The Court finds that the age of this case has hindered the defense's ability to successfully locate Dr. Freemyer. It is axiomatic that the sooner a case comes to trial the more successful a party will be in locating witnesses.

26. Additionally, the Court finds that there were multiple trial settings which caused delays for which the State failed to offer any justification. These delays weigh against the State.

27. The Court finds that the defendant was in continuous custody from January 18, 2008, until the date of the Motion for Speedy Trial hearing on August 24, 2010. This amounts to approximately two years and nine months of pretrial incarceration.

7

28.     The Court finds that the defendant asserted his right to a speedy trial on May 1, 2008, September 22, 2009 and January 12, 2010, and then again at the hearing on August 24, 2010.

A review of the entire record of this cause supports the trial court's resolution of disputed facts and the inferences which the trial court may have drawn from those facts. *See Cantu,* 253 S.W.3d at 281. Also supported by our review is the trial court's inference of intentional prosecutorial delay from the evidence of the re-indictments given the fact that each re-indictment stems from information available to the State at the time of the first indictment. *See id.* at 282 (appellate court defers to trial court's right to draw inferences). The second *Barker* factor weighs heavily against the State and we perceive no abuse of discretion by the trial court in making such a determination. *See Barker*, 407 U.S. at 530.

### C. Assertion of the Right

Although it is the State's duty to bring the defendant to trial, "a defendant does have the responsibility to assert his right to a speedy trial." *Cantu,* 253 S.W.3d at 282. "Whether and how a defendant asserts this right is closely related to the other three factors because the strength of his efforts will be shaped by them." *Id.* at 282–83. "The more serious the deprivation, the more likely a defendant is to complain." *Id.* at 283. "Therefore, the defendant's assertion of his speedy-trial right (or his failure to assert it) is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Id.* "Filing for a dismissal instead of a speedy trial will generally weaken a speedy-trial claim because it shows a desire to have no trial instead of a speedy one." *Id.* "If a defendant fails to first seek a speedy trial before seeking dismissal of the charges, he should provide cogent reasons for this failure." *Id.* "Repeated requests for a speedy trial weigh heavily in favor of the defendant, while the failure to make such

8

requests supports an inference that the defendant does not really want a trial, he wants only a dismissal." *Id.*

Cox filed his first *pro* se Motion for Speedy Trial on May 1, 2008, some three and a half months after his arrest and approximately 28 days after he was first indicted. On September 22, 2009, after the case had been re-indicted, Cox's court appointed counsel filed a Motion to Dismiss for Failure to Afford a Constitutional Right of Speedy Trial. On January 12, 2010, Cox urged the trial court to grant his speedy trial motion. The trial court denied the motion for the reason that trial was scheduled for the next day. Finally, after the case was indicted for the third time on February 3, 2010, Cox re-urged his speedy trial motion on August 24, 2010. Cox repeatedly and timely asserted his right to a speedy trial at times when he was represented and *pro se.* This factor weighs heavily against the State.

### D. Prejudice

The fourth factor is "whether and to what extent the delay has prejudiced the defendant." *Cantu,* 253 S.W.3d at 285. "When a court analyzes the prejudice to the defendant, it must do so in light of the defendant's interests that the speedy-trial right was designed to protect: (1) to prevent oppressive pretrial incarceration, (2) to minimize the accused's anxiety and concern, and (3) to limit the possibility that the accused's defense will be impaired." *Id.* This last type of prejudice is the most serious because a defendant's inability to adequately prepare his case "skews the fairness" of the system. *Id.* Although excessive delay is presumed to compromise a defense, the presumption is extenuated when the defendant acquiesces in the delay. *Dragoo,* 96 S.W.3d at 315.

In this case, Cox's pretrial incarceration lasted for some two years before his case was finally tried before a jury. When the trial court declared a mistrial, through no fault of Cox, because the jury was unable to reach a verdict, Cox's pretrial incarceration continued for another approximately nine months. Thirty-three months of pretrial incarceration is undoubtedly oppressive and in no way minimized Cox's anxiety and concern.

The most serious type of prejudice relates to the impairment of Cox's defense. *Cantu*, 253 S.W.3d at 285. Cox argues that he established actual prejudice by virtue of his being unable to locate an essential witness, Dr. Paul Freemyer. The trial court agreed. The State contends that Dr. Freemyer's notation in the medical records was ambiguous and that the trial court's finding that Dr. Freemyer's testimony was essential to the defense and that the age of the case hindered the defense's ability to locate him do not find support in the record. We disagree.

Where a defendant makes a *prima facie* showing of prejudice, the burden shifts to the State to show the defendant suffered "no serious prejudice." *See Ex parte McKenzie,* 491 S.W.2d 122, 123 (Tex.Crim.App. 1973). Here, Cox's assertion of prejudice regarding his inability to locate Dr. Freemyer coupled with the relevance and materiality of Dr. Freemyer's testimony regarding the bite are sufficient to establish a *prima facie* showing of prejudice.[3] *Id.* Accordingly, the burden shifted to the State to show that Cox suffered no serious prejudice. *Id.* The State made no such showing. Indeed, the State admitted that it failed to put on any evidence in the trial court demonstrating that Dr. Freemyer could be located. Instead, the State essentially contends that Cox was obliged to show due diligence in his attempts to locate Dr. Freemyer and that Dr.

---

[3] Actual prejudice is not required. *See Harris v. State*, 489 S.W.2d 303, 308 (Tex.Crim.App. 1973). The evidence in the record includes a subpoena issued for Dr. Freemyer, an individual no one was able to locate, and Dr. Freemyer's notation in the medical records regarding the bite mark. Obviously Dr. Freemyer's testimony regarding the bite mark was material, a finding made by the trial court, given the charge of assault causing bodily injury against a peace officer by biting the peace officer.

Freemyer's testimony would be helpful to Cox. In other words, rather than carrying its burden to show that Cox suffered no serious prejudice, the State simply challenged the trial court's determination that Cox had made a *prima facie* showing of prejudice. The trial court's determination that Cox was prejudiced is supported by the record.

### E. Balancing the Four Factors

In balancing the four *Barker* factors, we conclude that the delay in this case of either two years and/or two years and nine months was sufficient to trigger a speedy trial analysis. The trial court's finding that while some of the delay was attributable to Cox, the majority of the delay was attributable to the State in light of the multiple indictments filed in the case and the fact that the indictments were intentionally designed to cause delay is supported by the record. In other words, the reasons for the delay weigh heavily against the State. Cox repeatedly and timely asserted his right to a speedy trial, a factor also weighing heavily against the State. Finally, Cox was prejudiced by the delay and the State failed to show no serious prejudice to Cox, a factor also weighing heavily in Cox's favor.

Having reviewed the trial court's resolution of factual issues for an abuse of discretion and having reviewed its legal conclusions *de novo*, we perceive no abuse of discretion on the part of the trial court and concur with its legal conclusions. The State's sole issue is overruled.

## CONCLUSION

Having overruled the State's sole issue, the judgment of the trial court is affirmed.

December 21, 2012                                     CHRISTOPHER ANTCLIFF, Justice

Before McClure, C.J., Rivera, J., and Antcliff, J.

(Do Not Publish)

11