COURT OF APPEALS

EIGHTH DISTRICT OF
TEXAS

EL PASO, TEXAS

 

 


 
 
  
 THE STATE OF TEXAS,
  
                             Appellant,
  
 v.
  
 JUSTIN COX,
  
                            
 Appellee.
 
 
 §
  
 §
  
 §
  
 §
  
 §
  
 § 
  
 
 
  
 No. 08-10-00311-CR
  
 Appeal from the
  
 144th
 Judicial District Court
  
 of Bexar
 County, Texas
  
 (TC# 2010-CR-0949)
  
 
 


 

 

O
P I N I O N

            In one issue, the State of Texas appeals the trial
court’s dismissal of its case on grounds that Appellee Justin Cox’ right to a
speedy trial was violated.[1]  We affirm.

BACKGROUND

            On January 18, 2008,
Justin Cox was arrested and charged with assault causing bodily injury to a
public servant in violation of section 22.01(a)(1)-(b)(1) of the Texas Penal
Code.  Cox applied for court-appointed
counsel on January 22, 2008, and on February 18, 2008, attorney Victor Gomez
was appointed to represent him.  Cox was
indicted for the aforementioned offense on April 2, 2008, in Cause Number
2008-CR-2620, and charged with, inter
alia, intentionally, knowingly and recklessly causing bodily injury to E.
Bailey by biting E. Bailey, knowing that E. Bailey was a peace officer and that
E. Bailey was lawfully discharging his duties as a peace officer at the time of
the offense.  The indictment also alleged
that Cox had previously been convicted of the felony offense of burglary of a
habitation.  Arraignment was scheduled
for April 4, 2008.

            On April 18, 2008, and
again on September 19, 2008, Cox filed pro
se Motions to Dismiss Appointed Counsel. 
On May 1, 2008, Cox filed a pro se
form Motion for Speedy Trial.  On
November 13, 2008, attorney Victor Gomez filed a Motion to Withdraw as Counsel
which the trial court granted.

            Fifty-three days passed
before attorney Sandra Casias was appointed to represent Cox on January 5,
2009.  The case was set for trial on
February 9, 2009, and while both parties announced ready, the case was again
re-set.  On April 13, 2009, the State
re-indicted the case as Cause Number 2009-CR-4203.  The new indictment included an alternative
manner and means by which to prove the assault on a peace officer and a second
count alleging retaliation against Herb Quiel.[2]

            Attorney Sandra Casias
filed a Motion to Withdraw as Counsel on May 9, 2009, and the trial court
granted the motion on May 12, 2009.  The
following day, attorney Michael Hoyle was appointed to represent Cox.  The case was called for trial on June 15, 2009,
at which time Mr. Hoyle announced not ready, stating that he had not had
sufficient time to prepare for trial.

            On September 22, 2009,
Mr. Hoyle, on Cox’s behalf, filed a Motion to Dismiss for Failure to Afford a
Constitutional Right of Speedy Trial. 
That same day, Mr. Hoyle also filed a Motion to Quash the Indictment
alleging inadequate notice of the second count of the indictment because it
failed “to allege what unlawful act the defendant is supposed to have committed
in retaliation for the service of the prospective witness.”  Following a hearing, the trial court granted
the Motion to Quash which resulted in the removal of Count II of the indictment.

            At a pretrial motions
hearing on January 12, 2010, the trial court took up, inter alia, Cox’s speedy trial motion which he filed pro se on May 1, 2008, and through his
counsel on September 22, 2009.  The trial
court denied Cox’s speedy trial motion because the case was scheduled for trial
the next day.

            On January 13, 2010, the
case was again called and trial commenced. 
The trial court granted a directed verdict as to paragraph B of the indictment
which alleged assault against a public servant causing bodily injury.  On January 15, 2010, the trial court declared
a mistrial because the jury was unable to reach a verdict.

            The cause was again
re-indicted on February 3, 2010, as Cause Number 2010-CR-0949 and this time it
contained three counts:  (1) assault on a
public servant causing bodily injury; (2) retaliation against Ezra Bailey; and
(3) retaliation against Herb Quiel.  On
March 29, 2010, the case was called for trial and both parties announced not
ready.  On June 7, 2010, the case was
again called for trial.  The State and
Cox announced ready for trial, but the cause was re-set.  Finally, on August 24, 2010, Cox argued his
speedy trial motion and the trial court granted the motion and dismissed the
case.

            The trial court entered
its Findings of Fact and Conclusions of Law regarding Cox’s speedy trial motion
on October 4, 2010.  The State timely
appealed the dismissal of its case.

Standard of Review

The Sixth Amendment to the
Constitution of the United States provides that “[i]n all criminal
prosecutions, the accused shall enjoy the right to a speedy and public trial .
. . .”  U.S.
Const. amend. VI.  See also Tex. Code Crim. Proc. Ann. art. 1.05 (West 2005).  The right to a speedy trial is fundamental and
is applicable to the states through the Due Process Clause of the Fourteenth
Amendment.  See Klopfer v. North Carolina, 386 U.S. 213 (1967).

In Barker v. Wingo, the United States Supreme Court established four
factors to be considered when analyzing a speedy-trial
claim.  Barker
v. Wingo, 407 U.S. 514, 530 (1972);
see also Cantu
v. State, 253 S.W.3d 273, 280 (Tex.Crim.App. 2008).
 They are:  (1) the length of the delay; (2) the reasons
for the delay; (3) the defendant’s assertion of his right; and (4) prejudice to
the defendant.  Barker, 407 U.S. at 530;
Cantu, 253 S.W.3d at 280.
 No single factor is necessary or
sufficient to establish a violation of the right to a speedy
trial; “[r]ather, they are related factors and must be
considered together . . . .”  Barker, 407 U.S. at 533.
 In conducting this balancing test, we
weigh “the conduct of both the prosecution and the defendant . . . .”  Id. at 530.

“While
the State has the burden of justifying the length of delay, the defendant has
the burden of proving the assertion of the right and showing prejudice.”  Cantu, 253 S.W.3d at 280.
“The defendant’s burden of proof on the latter two factors ‘varies inversely’
with the State’s degree of culpability for the delay.”  Id.  “Thus, the greater the State’s bad faith or
official negligence and the longer its actions delay a trial, the less a
defendant must show actual prejudice or prove diligence in asserting his right
to a speedy trial.”  Id. at 280–81.

In
an appeal of a trial court’s ruling on a speedy-trial claim, we apply an abuse of discretion standard to the
trial court’s resolution of factual issues. 
Id.
at 282.  But, when reviewing the trial court’s legal
conclusions, we apply a de novo standard.  Id.
 A review of the four Barker v. Wingo
factors necessarily involves factual determinations and legal conclusions, but
the balancing of the four factors as a whole is a purely legal question.  Id.



Under
the abuse of discretion standard applicable to factual issues, we defer not
only to a trial court’s resolution of disputed facts, but also to the trial
court’s right to draw reasonable inferences from those facts.  Id.  “In assessing the evidence at a speedy-trial hearing, the trial judge
may completely disregard a witness’s testimony, based on credibility and
demeanor evaluations, even if that testimony is uncontroverted.”  Id.  “The trial judge may disbelieve any evidence
so long as there is a reasonable and articulable basis for doing so[,][a]nd all
of the evidence must be viewed in the light most favorable to [the trial court’s]
ultimate ruling.”  Id.  Because the State lost in the trial court on Cox’s
speedy-trial claim, we presume that
the trial judge resolved any disputed fact issues in Cox’s favor, and we defer
to the implied findings of fact supported by the record.  Id.

Analysis of the four
Barker
v. Wingo Factors

A.
 Length of Delay

The length of delay is the “triggering mechanism” for an
analysis of the remaining three factors and is measured from the date the
defendant is arrested or formally accused.  Cantu, 253 S.W.3d at 281.
 The balancing test is “triggered by a
delay that is unreasonable enough to be ‘presumptively prejudicial.’”  Id.   “There is no set time element that triggers
the analysis,    but . . . a delay of
four months is not sufficient while a seventeen-month delay is.”  Id.

Cox
was arrested on January 18, 2008, and his first trial commenced on January 13,
2010.

This
two-year delay is sufficient to trigger a speedy trial analysis.  See
id.  Cox’s trial ended when the trial court declared a mistrial because the
jury was unable to reach a verdict.  The
case was again called for trial on June 7, 2010, but was re-set.  The trial court heard Cox’s speedy trial
motion on August 24, 2010.  If the prior
two-year delay was not enough to trigger a speedy trial analysis, then an
approximate thirty-three month delay is certainly sufficient.  Id.

            Because
Cox asserted his speedy trial rights both prior and subsequent to the trial on
the second indictment, we do not find persuasive the State’s argument that the
length of the delay in this case should be calculated from the date the trial
court declared a mistrial rather than from the date of Cox’s arrest.  See id.  The trial court was correct in determining
that the length of the delay in this case was presumptively prejudicial.  Id.

B.
 Reason for the Delay

Once
it is determined that a presumptively prejudicial delay has occurred, the State
bears the burden of justifying the delay.  Id. at 280.  Intentional prosecutorial delay weighs heavily
against the State, while more neutral reasons, including negligence or
overcrowded dockets, weigh less heavily.  Zamorano
v. State, 84 S.W.3d 643, 649 (Tex.Crim.App. 2002)
(quoting Barker, 407 U.S. at 531).
 “In the absence of an assigned reason
for the delay, a court may presume neither a deliberate attempt on the part of
the State to prejudice the defense nor a valid reason for the delay.” Dragoo
v. State, 96 S.W.3d 308, 314 (Tex.Crim.App. 2003).

Here,
the record establishes that Cox was indicted for assault causing bodily injury to
a public servant on April 2, 2008, some 70-plus days following his arrest.  He was re-indicted for the same offense on
April 13, 2009.  The new indictment
included an alternative means and manner by which the assault causing bodily
injury to a peace officer might be proved and a second count alleging
retaliation against another individual.  Subsequent
to a mistrial, Cox was again re-indicted for the same offense on February 3,
2010.  This latest indictment included
two counts of retaliation against Ezra Bailey and Herb Quiel respectively, as
well as the original charge of assault causing bodily injury to a peace
officer.  As previously noted, Cox first went
to trial on January 13, 2010.  Cox argues
that the re-indictments were intentional acts by the State and that therefore
this factor should weigh heavily against the State. 

       In its Findings of Fact and Conclusions
of Law, the trial court found that prior to the commencement of trial on
January 13, 2010, the State was aware that the pending indictment was
“incorrect at this time and did not attempt to correct it prior to trial.”  The trial court also made the following
pertinent findings of fact:

 

*                      *                      *

 

22.       The Court finds that the added
allegations in the re-indictments were based on facts that were available from
the date of its initial indictment.

 

23.       The Court finds that the additional
allegations charged in the re-indictments caused deliberate and unreasonable
delays in the proceedings, thereby compelling the defendant to request
additional time to prepare another defense.

 

24.
      The Court finds that the State was
aware of the problems in the indictment in September of 2009 and chose to
ignore the problem until the day of trial which caused further delays in the
case.

 

25.       The Court further finds that the defense
was prejudiced by not being able to locate the witness, Dr. Paul Freemyer,
treating physician to the complainant, subpoenaed by the defense counsel.  Dr. Freemyer made a notation in the medical
records that said, “bite mark, question.” 
The Court finds that the witness is essential to the defendant’s case
against the allegation of biting.  The
Court finds that the age of this case has hindered the defense’s ability to
successfully locate Dr. Freemyer.  It is
axiomatic that the sooner a case comes to trial the more successful a party
will be in locating witnesses.

 

26.       Additionally, the Court finds that there
were multiple trial settings which caused delays for which the State failed to
offer any justification.  These delays
weigh against the State.

 

27.       The Court finds that the defendant was in
continuous custody from January 18, 2008, until the date of the Motion for
Speedy Trial hearing on August 24, 2010. 
This amounts to approximately two years and nine months of pretrial
incarceration.

 

28.       The Court finds that the defendant
asserted his right to a speedy trial on May 1, 2008, September 22, 2009 and
January 12, 2010, and then again at the hearing on August 24, 2010.

 

A
review of the entire record of this cause supports the trial court’s resolution
of disputed facts and the inferences which the trial court may have drawn from
those facts.  See Cantu, 253 S.W.3d at 281. 
Also supported by our review is the trial court’s inference of
intentional prosecutorial delay from the evidence of the re-indictments given
the fact that each re-indictment stems from information available to the State
at the time of the first indictment.  See id. at 282 (appellate court defers
to trial court’s right to draw inferences).  The second Barker
factor weighs heavily against the State and we perceive no abuse of discretion
by the trial court in making such a determination.  See
Barker, 407 U.S. at 530.

C.
 Assertion of the Right

Although
it is the State’s duty to bring the defendant to trial, “a defendant does have
the responsibility to assert his right to a speedy trial.”  Cantu, 253 S.W.3d at 282.
 “Whether and how a defendant asserts
this right is closely related to the other three factors because the strength
of his efforts will be shaped by them.”  Id. at 282–83.
 “The more serious the deprivation, the
more likely a defendant is to complain.”  Id. at 283.
 “Therefore, the defendant’s assertion of
his speedy-trial right (or his
failure to assert it) is entitled to strong evidentiary weight in determining
whether the defendant is being deprived of the right.”  Id.  “Filing for a dismissal instead of a speedy trial will generally weaken a speedy-trial claim because it shows a
desire to have no trial instead of a speedy one.”  Id.  “If a defendant fails to first seek a speedy trial before seeking dismissal
of the charges, he should provide cogent reasons for this failure.”  Id.  “Repeated requests for a speedy
trial weigh heavily in favor of the defendant, while the
failure to make such requests supports an inference that the defendant does not
really want a trial, he wants only a dismissal.”  Id.

Cox filed his first pro
se Motion for Speedy Trial on May 1, 2008, some three and a half months
after his arrest and approximately 28 days after he was first indicted.  On September 22, 2009, after the case had
been re-indicted, Cox’s court appointed counsel filed a Motion to Dismiss for
Failure to Afford a Constitutional Right of Speedy Trial.  On January 12, 2010, Cox urged the trial
court to grant his speedy trial motion. 
The trial court denied the motion for the reason that trial was
scheduled for the next day.  Finally,
after the case was indicted for the third time on February 3, 2010, Cox
re-urged his speedy trial motion on August 24, 2010.  Cox repeatedly and timely asserted his right to
a speedy trial at times when he was represented and pro se.  This factor weighs
heavily against the State.

D.
 Prejudice

The
fourth factor is “whether and to what extent the delay has prejudiced the
defendant.” Cantu, 253 S.W.3d at 285.
 “When a court analyzes the prejudice to
the defendant, it must do so in light of the defendant’s interests that the speedy-trial right was designed to
protect:  (1) to prevent oppressive
pretrial incarceration, (2) to minimize the accused’s anxiety and concern, and (3)
to limit the possibility that the accused’s defense will be impaired.”  Id.  This last type of prejudice is the most
serious because a defendant’s inability to adequately prepare his case “skews
the fairness” of the system.  Id.  Although excessive delay is presumed to
compromise a defense, the presumption is extenuated when the defendant
acquiesces in the delay.  Dragoo, 96 S.W.3d at  315.

            In this case, Cox’s pretrial
incarceration lasted for some two years before his case was finally tried before
a jury.  When the trial court declared a
mistrial, through no fault of Cox, because the jury was unable to reach a
verdict, Cox’s pretrial incarceration continued for another approximately nine
months. Thirty-three months of pretrial incarceration is undoubtedly oppressive
and in no way minimized Cox’s anxiety and concern.

            The most serious type of prejudice
relates to the impairment of Cox’s defense.  Cantu,
253 S.W.3d at 285.  Cox argues that he
established actual prejudice by virtue of his being unable to locate an
essential witness, Dr. Paul Freemyer. 
The trial court agreed.  The State
contends that Dr. Freemyer’s notation in the medical records was ambiguous and
that the trial court’s finding that Dr. Freemyer’s testimony was essential to
the defense and that the age of the case hindered the defense’s ability to
locate him do not find support in the record. 
We disagree.

            Where a defendant makes a prima facie showing of prejudice, the
burden shifts to the State to show the defendant suffered “no serious
prejudice.”  See Ex parte McKenzie, 491 S.W.2d 122, 123 (Tex.Crim.App.
1973).  Here, Cox’s assertion of
prejudice regarding his inability to locate Dr. Freemyer coupled with the
relevance and materiality of Dr. Freemyer’s testimony regarding the bite are
sufficient to establish a prima facie
showing of prejudice.[3]
 Id.
 Accordingly, the burden shifted to the
State to show that Cox suffered no serious prejudice.  Id.  The State made no such showing.  Indeed, the State admitted that it failed to
put on any evidence in the trial court demonstrating that Dr. Freemyer could be
located.  Instead, the State essentially contends
that Cox was obliged to show due diligence in his attempts to locate Dr.
Freemyer and that Dr. Freemyer’s testimony would be helpful to Cox.  In other words, rather than carrying its
burden to show that Cox suffered no serious prejudice, the State simply
challenged the trial court’s determination that Cox had made a prima facie showing of prejudice.  The trial court’s determination that Cox was
prejudiced is supported by the record.

E.
 Balancing the Four Factors



            In balancing the four Barker factors, we conclude that the delay in this case of either
two years and/or two years and nine months was sufficient to trigger a speedy
trial analysis.  The trial court’s
finding that while some of the delay was attributable to Cox, the majority of
the delay was attributable to the State in light of the multiple indictments
filed in the case and the fact that the indictments were intentionally designed
to cause delay is supported by the record. 
In other words, the reasons for the delay weigh heavily against the
State.  Cox repeatedly and timely
asserted his right to a speedy trial, a factor also weighing heavily against
the State.  Finally, Cox was prejudiced
by the delay and the State failed to show no serious prejudice to Cox, a factor
also weighing heavily in Cox’s favor.

            Having reviewed the
trial court’s resolution of factual issues for an abuse of discretion and
having reviewed its legal conclusions de
novo, we perceive no abuse of discretion on the part of the trial court and
concur with its legal conclusions.  The
State’s sole issue is overruled.

CONCLUSION

Having overruled the State’s sole issue, the
judgment of the trial court is affirmed.

 

 

December 21, 2012                                         CHRISTOPHER
ANTCLIFF, Justice

 

Before McClure, C.J., Rivera, J., and Antcliff, J.

 

(Do Not Publish)











[1]
This cause was transferred from the Fourth Court of Appeals to this Court
pursuant to a docket equalization order entered by the Texas Supreme Court.  See Tex. Gov’t Code Ann. § 73.001 (West
2005).  We have applied precedent of the
San Antonio Court of Appeals.  See Tex.
R. App. P. 41.3.

 





[2]
The State also filed a Motion to Dismiss Cause Number 2008-CR-2620.





[3]
Actual prejudice is not required.  See Harris v. State, 489 S.W.2d 303, 308
(Tex.Crim.App. 1973).  The evidence in
the record includes a subpoena issued for Dr. Freemyer, an individual no one
was able to locate, and Dr. Freemyer’s notation in the medical records
regarding the bite mark.  Obviously Dr.
Freemyer’s testimony regarding the bite mark was material, a finding made by
the trial court, given the charge of assault causing bodily injury against a
peace officer by biting the peace officer.