

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| RICHARD ANTHONY MONTEZ, | § | No. 08-23-00026-CR |
| Appellant, | § | Appeal from the |
| v. | § | 187th Judicial District Court |
| THE STATE OF TEXAS, | § | of Bexar County, Texas |
| Appellee. | § | (TC# 2022-CR-9260) |

## <u>MEMORANDUM OPINION</u>

This appeal turns our attention to the Sixth Amendment right to a speedy trial.[1] Appellant, Richard Anthony Montez, was arrested in February 2018 but not tried until November 2022. He was found guilty of capital murder and sentenced to life imprisonment without the possibility of parole. In a single issue on appeal, Appellant contends the four-year-nine-month delay between his arrest and trial violated the constitutional right to a speedy trial. The delay here *is* extraordinary. But the cause of the delay is a confluence of several factors: the COVID-19 pandemic, Appellant's change in counsel, discovery issues in a complex case, and *some* actions that can be attributed to

---

[1] This case was transferred from the Fourth Court of Appeals pursuant to a docket equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001. We follow the precedent of the Fourth Court of Appeals to the extent it might conflict with our own. *See* TEX. R. APP. P. 41.3.

the State. While not condoning the aggregate delay here—which should be the rare exception and not the rule—we affirm the conviction.

<h1 align="center">BACKGROUND</h1>

On February 2, 2018, San Antonio Police Department officers responded to reports of gunfire at a public-housing apartment complex. Officers located one gunshot victim in an apartment in the complex, 14-year-old Angel Gebara, and another gunshot victim in a nearby car, 69-year-old Benito Gallegos. Each victim was transported to the hospital for treatment. After an approximate six-to-ten-hour standoff at an apartment in the complex, Appellant and other individuals, including Juan Martinez and Andres Martinez, were taken into custody in connection with the shooting. Despite medical intervention, both Gebara and Gallegos died from gunshot wounds to the head. On May 10, 2018, Appellant was indicted for the capital murders of Gebara and Gallegos in cause number 2018-CR-4785B. Juan and Andres Martinez were also indicted for the capital murders of Gebara and Gallegos in cause numbers 2018-CR-4785A and 2018-CR-4785C.

### A. The August 2022 trial setting

The case against Appellant was set for trial on August 1, 2022. But on the day of trial, the State announced not ready for trial and moved for a continuance mostly because three of its witnesses were unavailable. The State claimed that two of the three witnesses were retired police investigators, both of whom were out of town at the time. The third witness was currently under mental health treatment. Defense counsel objected to the continuance, arguing the State should have secured the appearance of these witnesses by serving them with subpoenas. After the trial court denied the continuance, the State moved to dismiss the indictment, informing the trial court

and Appellant that the case would be reindicted. After conferring with Appellant, his counsel had no objection to the State's motion to dismiss. The trial court then dismissed the case.

### B. The second indictment, Appellant's motion to dismiss indictment on speedy-trial grounds, and the trial.

On September 27, 2022, the State then re-indicted Appellant for capital murder in cause number 2022-CR-9260. Through counsel, Appellant promptly moved to set aside the indictment on speedy-trial grounds under the Sixth Amendment and articles 1.03, 1.04, and 1.05 of the Texas Code of Criminal Procedure. At a November 10th hearing on the motion, the trial court took testimony from Appellant and his investigator. Along with three exhibits admitted at the hearing, the trial court took judicial notice of the clerk's record in the original and re-indicted case. Those proofs document a chronology of events that we outline below.

At the hearing, Appellant contended that the dismissal and then reindictment of the case was done to give the State a strategic advantage because it was not ready for trial. The State responded that its lead detective was out of the country for the August trial setting, and any delay before that trial setting resulted from the amount of discovery for the case, the COVID-19 pandemic, and the death of one of Appellant's attorneys. At the end of the hearing, the trial court denied the motion to dismiss without explanation and informed the parties that the trial would commence on November 29, 2022.[2]

The case proceeded to trial at that time. Following eight days for the guilt-innocence phase of trial, with 30 witnesses and over 400 exhibits, the jury returned a guilty verdict.[3] As required

---

[2] The trial court did not prepare findings of fact and conclusions of law in response to Appellant's request that it do so. Appellant does not complain on appeal about the absence of the requested findings of fact and conclusions of law.

[3] Juan Martinez accepted a plea deal, agreeing to plead guilty to murder as a party and to testify, if required, in exchange for a 24-year sentence. At Appellant's eventual trial, Juan testified that he, along with Andres Martinez and Appellant, committed the murders.

by law, the trial court sentenced Appellant to confinement for life without the possibility of parole. TEX. PENAL CODE ANN. § 12.31 (establishing mandatory sentence for any person over 18 who commits capital murder where the State does not seek the death penalty). His sole issue on appeal complains of the denial of his motion to dismiss the indictment based on a violation of the Sixth Amendment right to a speedy trial. We step back to give a more detailed picture of how this case progressed.

### C.    Chronology of events

Appellant was arrested on February 3, 2018, and originally indicted on May 10, 2018. The court appointed attorney David Woodard to represent him. While still represented by counsel, Appellant filed several *pro se* motions on January 29, 2019. One of those motions sought either a "speedy trial or that said indictment be dismissed[.]" Another motion asked the court to dismiss his appointed counsel because Appellant "lost faith in counsel and no longer trusts counsel's advice." In April 2019, the Bexar County District Attorney recused himself from the case and moved to have pro tem counsel appointed because one of Appellant's co-defendants was represented by an attorney who later joined the district attorney's office.[4]

On June 12, 2019, attorney David Woodard moved to withdraw from the case. His motion recites that the case was set for trial on June 17, 2019, but Appellant in May had filed a grievance against him with the State Bar. The court granted the motion and appointed attorney Oscar Cantu, Jr. to represent Appellant. In September 2019, the attorney pro tem, citing to the "volumes of documents, videos, photos and scientific evidence" along with the "numerous witnesses,

---

[4] Our record does not contain an order granting that motion, but soon after attorney Miguel Najera began filing pleadings as the pro tem attorney representing the State.

officers, sheriff deputies, experts, and family members of the victim" involved in the case moved for and obtained the appointment of an advocate attorney for the victims, and an investigator.

In October 2019, attorney Cantu moved to obtain Appellant's release from jail. The court granted that motion, and Appellant was released from jail on December 6, 2019. Pro tem counsel stated at that hearing on the motion that the State was not ready for trial. The same month, the attorney pro tem, again citing to the size and seriousness of the case, asked for the appointment of second chair counsel.

The COVID-19 pandemic hit in the Spring of 2020.[5] The record here supports that in Bexar County some in-person jury trials resumed in August 2021, but that regular in-person jury practice did not resume until March 2022. But all was not quiet during this interim COVID-19 period. On June 17, 2020, Appellant was rearrested on a different charge, and sent back to jail. And during the summer of 2020, the trial court heard a contested motion to compel discovery. Local procedure includes the filing of a "discovery acknowledgment" form that certifies that the State has produced the categories of materials described on the form; the form includes a signature line for defense counsel to acknowledge the same. Counsel for Appellant, and his two co-defendants, contended that they could not approve the form because of claimed discrepancies in the volume of documents produced. The State had downloaded onto hard drives discovery responses for all three cases against the three defendants, totaling 658, 466, and 643 gigabytes of data for the respective cases. The State had also downloaded 98 additional items onto hard drives

---

[5] On March 13, 2020, Texas Governor Greg Abbott issued a proclamation under the Texas Disaster Act of 1975 certifying that "COVID-19 poses an imminent threat of disaster" in all 254 Texas counties; he renewed that declaration in successive months. The Governor of the State of Tex., Proclamation No. 41-3720, 45 Tex. Reg. 2087, 2095 (2020). The same day, the Texas Supreme Court issued its first order that "subject only to constitutional limitations," all courts were required to modify their procedures to avoid the risk to court staff, parties, attorneys, jurors, and the public. *First Emergency Ord. Regarding COVID-19 State of Disaster*, 596 S.W.3d 265 (Tex. 2020).

that were too large to produce through the E-filing portal. These hard drives were loaded in February and May 2020. After taking testimony from the IT manager for the Bexar County District Attorney's office (who had collected and forwarded all the files to the several pro tem attorneys), and after hearing argument, the trial court concluded in a contested hearing on July 23, 2020, that the State was in discovery compliance.

Four days later, pro tem counsel announced that the State would not seek the death penalty against Appellant. The trial court then required that Appellant and State complete any plea negotiations by August 31, 2020.[6] The trial court held another status hearing on June 24, 2021, where Appellant confirmed that he rejected the State's plea offer. The parties conferred and agreed to a December 7, 2021, trial date. Appellant's counsel agreed that he had received all the State's discovery.

But in September 2021, Appellant's lead attorney, Oscar Cantu, Jr., passed away. The trial court in November 2021 appointed attorney Kelly Pittl to then assist in the defense. Our record does not show an order formally continuing the December 2021 trial, but Appellant acknowledged at the speedy trial hearing that the case could not move forward based on Cantu's death.

Appellant's new counsel filed written discovery requests on November 23, 2021. In February 2022, counsel moved for the State to provide a witness list, and production of material germane to any listed witness. The same month, counsel filed additional written requests for documents, and a request for a formal designation of experts and production of expert reports. The Clerk's file contains rulings on some of those requests by the trial court on February 23, 2022. The trial court held other discovery hearings in March and April. And the Clerk's record contains a

---

[6] Appellant's then counsel stated on the record that he had not gotten a complete set of the discovery materials because the hard drive he provided to the State was too small, but that he would provide a larger drive that same afternoon.

July 7, 2022, discovery acknowledgment form detailing the materials provided to Appellant and a two-page witness list filed by the State. At the speedy-trial hearing, the trial court recited the litany of discovery hearing events from its docket sheet but did not assign fault to either party for any discovery abuse.

And as we note above, following these discovery hearings, the case was set for trial on August 2, 2022, but the original case and indictment were dismissed when the trial court denied the State's motion for continuance. After Appellant was reindicted, the case proceeded to trial in November 2022, resulting in a guilty verdict.

## STANDARD OF REVIEW AND CONTROLLING LAW

The Sixth Amendment to the U.S. Constitution, made applicable to the States through the Due Process Clause of the Fourteenth Amendment, guarantees a defendant a right to a speedy trial.[7] *See* U.S. CONST. amend. VI; *Klopfer v. State of North Carolina*, 386 U.S. 213, 222–26 (1967); *State v. Lopez*, 631 S.W.3d 107, 113 (Tex. Crim. App. 2021); *Balderas v. State*, 517 S.W.3d 756, 767 (Tex. Crim. App. 2016). When a defendant claims that the right to a speedy trial has been violated, courts analyze and weigh four factors: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of the right; and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *Lopez*, 631 S.W.3d at 113; *Balderas*, 517 S.W.3d at 767. Courts must weigh the strength of each of the *Barker* factors and then balance their relative weights considering the State's and defendant's conduct. *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008).

---

[7] A defendant also holds the right to a speedy trial under Article 1.05 of the Texas Code of Criminal Procedure. TEX. CODE CRIM. PROC. ANN. art. 1.05; *Hull v. State*, 699 S.W.2d 220, 221 (Tex. Crim. App. 1985) (en banc). On appeal, Appellant does not raise a separate issue under state law.

The evidentiary burden differs depending on the *Barker* factor at stake. The State carries the burden to justify the length of the delay. *Cantu*, 253 S.W.3d at 280. The defendant carries the burden to show the delay is "presumptively prejudicial" and to prove he or she asserted his right and suffered prejudice. *Lopez*, 631 S.W.3d at 113–14; *Cantu*, 253 S.W.3d at 280.

In reviewing the trial court's analysis of the *Barker* factors, we apply a bifurcated standard of review. *Lopez*, 631 S.W.3d at 113–14; *Balderas*, 517 S.W.3d at 767–68. Factual components are reviewed under an abuse of discretion standard, but we review legal components de novo. *Lopez*, 631 S.W.3d at 113–14. Consequently, we defer to explicit or implicit findings if they are supported by the record and sustain the trial court's ruling. *Id.* at 114; *Balderas*, 517 S.W.3d at 767–68. Engaging in the *Barker* speedy-trial analysis on appeal requires us to assess each factor individually yet balance them holistically. *Lopez*, 631 S.W.3d at 114; *Balderas*, 517 S.W.3d at 768.

## DISCUSSION

### A. Length of delay

The first *Barker* factor—the length of delay—is a threshold factor. A defendant carries the burden to show the delay is presumptively prejudicial. *Lopez*, 631 S.W.3d at 113–114. A defendant satisfies that burden by convincing the reviewing court that the delay in the case has crossed the threshold dividing ordinary from presumptively prejudicial delay. *Lopez*, 631 S.W.3d at 114 (citing *Doggett v. U.S.*, 505 U.S. 647, 651–52 (1992)). If the defendant fails to carry that burden, the reviewing court need not trigger a full *Barker* speedy-trial analysis. *Lopez*, 631 S.W.3d at 114. The delay is measured from the time the defendant is arrested or charged to the time of trial or demand for a speedy trial. *State v. Lampkin*, 630 S.W.3d 559, 563 (Tex. App.—San Antonio 2021, no pet.). Because the length of delay in each case depends on the unique circumstances of that

8

case, there is no formula for concluding that a certain delay is presumptively prejudicial. *Lopez*, 631 S.W.3d at 114. Even so, there are signposts. A delay approaching one year can trigger the *Barker* speedy-trial analysis. *Balderas*, 517 S.W.3d at 768. A delay exceeding three and one-half years is well beyond the minimum necessary to trigger this analysis. *Id.* at 768.

Here, the delay of four years and nine months between Appellant's arrest and his trial is sufficient to trigger a complete *Barker* speedy-trial analysis. At the hearing on the motion, Appellant offered uncontroverted testimony of his arrest in February 2018, and defense counsel argued the length of the delay triggers a full *Barker* speedy-trial analysis. The State did not argue otherwise below, or on appeal.

On appeal, Appellant contends that the delay of four years and nine months between his arrest and trial *also* "weighs heavily in [his] favor . . . ." The State "concedes that . . . the length of delay here is sufficient to trigger the speedy-trial inquiry[,]" but counters that the length of the delay, "does not *independently* weigh against either party in its own right." (emphasis original). According to the State, any weight attributable to the length of the delay should be considered under the fourth *Barker* factor—prejudice—not under the first factor—length—to prevent "double counting" the effect of a lengthy delay in Appellant's favor. In support of its argument, the State directs our attention to the following passage in *Doggett*, italicizing the last sentence for our benefit:

> The first of these is actually a double enquiry. Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from "presumptively prejudicial" delay, since, by definition, he cannot complain that the government has denied him a "speedy" trial if it has, in fact, prosecuted his case with customary promptness. If the accused makes this showing, the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim. This latter enquiry is significant to the speedy trial analysis because, as we discuss below, the presumption that pretrial

9

delay has prejudiced the accused intensifies over time. In this case, the extraordinary 8½-year lag between Doggett's indictment and arrest clearly suffices to trigger the speedy trial enquiry; *its further significance within that enquiry will be dealt with later*.

*Doggett*, 505 U.S. at 651–52 (emphasis added) (internal citations omitted).

Yet, in *Zamorano v. State*, 84 S.W.3d 643, 649 (Tex. Crim. App. 2002) (en banc), the Court of Criminal Appeals appears to have considered this very passage in *Doggett* in analyzing the first *Barker* factor. The court concluded that a sufficient delay by itself could weigh heavily against the State. *See Zamorano*, 84 S.W.3d at 648–49. There, the court concluded that because delays of two years and ten months between arrest and speedy-trial hearing and of nearly four years between arrest and plea hearing "in this plain-vanilla DWI case," "stretched well beyond the bare minimum needed to trigger judicial examination of the claim, [and] this factor—in and of itself—weighs heavily against the State." *Id.* at 649.

This case was not a plain-vanilla DWI case. It was a capital-murder case with co-defendants and involved pro tem prosecutors, a succession of defense counsel, and disruption by the COVID-19 pandemic. That said, the nearly-five-year delay here stretched far beyond the minimum needed to trigger the added inquiry. So this factor weighs heavily in favor of finding a speedy-trial-right violation. *See Baldera*s, 517 S.W.3d at 768 (eight-year delay); *Zamorano*, 84 S.W.3d at 649 (nearly-four-year delay); *Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003) (three-and-a-half-year delay).

### B.   Reasons for delay

The second *Barker* factor addresses the reason for the delay. The State bears the burden to justify the length of the delay. *Cantu*, 253 S.W.3d at 280. In assessing the State's justification, "we assign different weights to different reasons." *Balderas*, 517 S.W.3d at 768. "A deliberate attempt

to delay the trial in order to hamper the defense should be weighted heavily against the government." In contrast, "[d]elay caused by either the defendant or his counsel weighs against the defendant." *Balderas*, 517 S.W.3d at 768. "In the absence of an assigned reason for the delay, a court may presume neither a deliberate attempt on the part of the State to prejudice the defense nor a valid reason for the delay." *Id.* (internal quotation marks omitted). The Court also acknowledges a middle ground between "diligent prosecution and bad-faith delay" that it termed "official negligence[.]" *Doggett*, 505 U.S. at 656–57. "While not compelling relief in every case where bad-faith delay would make relief virtually automatic, neither is negligence automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him." *Id.*

On appeal, the State argues that it can at most be held responsible for only ten months of the delay and that its culpability was not intentional but at most, negligent. The ten months is made up of (1) six-months that the State suggests it may have contributed to discovery issues, and (2) the four-months between the August 2, 2022, trial setting and the eventual November 2022 trial. Even for that, the State claims any failure on its part was merely negligent and was not for some strategic advantage. Appellant counters that the State has no justification for the delay and the second *Barker* factor should weigh heavily against the State. Appellant's assertion is belied by the record.

(1)  Delay attributed to Appellant

The pleadings record (that the trial court took judicial notice of) establishes that a portion of the delay is attributable to Appellant. He was represented by four attorneys during this case. The first attorney, David Woodard, was appointed on May 1, 2018. But Woodard moved to withdraw on June 12, 2019, five days before a first trial setting, because Appellant filed a grievance against him with the State Bar the month before. The trial court appointed his second attorney,

11

Oscar Cantu, Jr., on June 24, 2019. Appellant's third attorney, Orlando Castanon, was appointed on July 23, 2020 to assist defense counsel Cantu. Defense counsel Cantu died on September 26, 2021. Appellant's fourth attorney, Kelly Pittl, was appointed on November 9, 2021. Defense counsels Castanon and Pittl represented Appellant during the speedy-trial hearing and the trial on the merits.

At the hearing on his motion to dismiss, Appellant agreed that because of Cantu's death and defense counsel Pittl's later appointment, the trial setting in December 2021 was postponed. Appellant also agreed with the State that the case had been reset a few times on the defense's behalf to ensure that his attorneys "had everything" in terms of discovery, even before the COVID-19 pandemic. The record suggests that the case would have proceeded to trial earlier if not for the withdrawal of Woodard and the death of Cantu. Because the record contains evidence suggesting that Appellant's changes in counsel delayed two potential trial settings, the second *Barker* factor weighs against him for significant periods between the date of arrest through December 2021. *See Vermont v. Brillon*, 556 U.S. 81, 90–91 (2009) (reaffirming that an attorney is the defendant's agent when acting or failing to act and delay caused by defense counsel is charged to the defendant).

(2) Indeterminate periods of delay

Some periods of delay can be assigned neither to Appellant nor the State. The suspension, and then later limitations on jury trials because of COVID-19 fits that category. *See State v. Elizondo*, No. 04-21-00489-CR, 2022 WL 3047103, at *3 (Tex. App. –San Antonio Aug. 3, 2022) (mem. op., not designated for publication) ("However, courts that have considered the impact of the pandemic on speedy-trial rights have nearly all countenanced additional delays resulting from the pandemic."); *United States v. Dunn*, 83 F.4th 1305, 1316 (11th Cir. 2023) ("The government

12

points out that our sister circuits have held that the national public health emergency caused by the global COVID-19 pandemic provided sufficient justification for a district court's district-wide blanket order temporarily continuing jury trials during this pandemic and excluding that time under the Speedy Trial Act's ends-of-justice exception.") (collecting cases). Although some delays, like overcrowded courts, can still count "less heavily" against the State, we are reluctant to put the early phase of the COVID-19 pandemic in that category. And for the later periods of the pandemic, when our record shows that some jury trials were proceeding, Appellant lost his December 2021 trial setting due to the unfortunate passing of his counsel.

Nor does our record show that the State is uniquely responsible for any specific period of delay arising from discovery issues. Instead, the case involved documents and exhibits measured in gigabytes. Over 400 exhibits were eventually admitted at trial through some of the 30 testifying witnesses. On July 23, 2020, the trial court determined that the State complied with its discovery obligations. Yet when new counsel entered the case in late 2021, new written discovery motions were filed. Other than an issue over a ballistics expert, which is little explained in our record, we cannot determine that the discovery hearings in the Spring of 2022 were caused by the State or advanced the case. Although we might discern some limited periods of indeterminate delay, they would only count slightly against the State.

(3) Delay Attributed to State

We can assign four months and 27 days of delay to the State based on the dismissal of the indictment on August 1, 2022, which postponed trial until November 29, 2022. What is less clear is if that action was based on negligence of pro tem counsel in not arranging for three witnesses to make themselves available for the August trial date, or if it was designed to gain a strategic

13

advantage. As there is sufficient evidence in the record to suggest only negligence, we could not disturb an implied finding of negligence (and not a deliberate attempt to delay the trial).

In summary, the reason for much of the delay in this case can be assigned to Appellant or his agent attorneys. Additionally, much is due to neutral factors that weigh neither against the Appellant or the State, or only somewhat against the State. Of the 57 months it took to resolve this case, we can only confidently assign almost a five-month period to the State. The reason for delay factor weighs heavily for the State.

## C. Assertion of right to speedy trial

The third *Barker* factor focuses on the defendant's assertion of the right to a speedy trial. *Balderas*, 517 S.W.3d at 771. Appellant carries the burden to prove he asserted his right. *Id.* That assertion "should be, at the very least, unambiguous." *Henson v. State*, 407 S.W.3d 764, 769 (Tex. Crim. App. 2013). And the assertion of the right "is entitled to strong evidentiary weight in determining whether the defendant has been deprived of that right." *Balderas*, 517 S.W.3d at 771. "A defendant's lack of a timely demand for a speedy trial indicates strongly that he did not really want one." *Id. "*The longer the delay becomes, the more likely a defendant who wished a speedy trial would be to take some action to obtain it." *Id.* (internal quotation marks omitted). This factor acknowledges "the reality that defendants may have incentives to employ delay as a 'defense tactic': delay may 'work to the accused's advantage' because 'witnesses may become unavailable, or their memories may fade' over time." *Brillon*, 556 U.S. at 90 (quoting *Barker*, 407 U.S. at 521). "Thus, inaction weighs more heavily against a violation the longer the delay becomes." *Balderas*, 517 S.W.3d at 771 (internal quotation marks omitted).

Appellant argues on appeal that "[he] timely asserted his speedy trial right" when he "requested a speedy trial in 2019 and filed his speedy trial motion on October 26, 2022." We

disagree. Appellant's 2019 pro se motions for a speedy trial were filed while he was being represented by counsel. The first motion, titled "Motion for Speedy Trial" was filed on January 29, 2019. It was one of several motions filed by Appellant that day.[8] He was represented then by defense counsel David Woodard. The second motion, titled "Motion to Set Aside Indictment", was filed on July 10, 2019. At that time, Appellant was represented by defense counsel Oscar Cantu, Jr.

A defendant has no right to hybrid representation, and so a trial court can disregard any pro se motion filed by a defendant who is represented by counsel. *Melendez v. State*, 467 S.W.3d 586, 591 (Tex. App.—San Antonio 2015, no pet.) (citing *Robinson v. State*, 240 S.W.3d 919, 922 (Tex. Crim. App. 2007)). Nothing in the record shows that Appellant's two *pro se* motions were adopted by appointed counsel, presented to the trial court, or ruled on by the trial court. These *pro se* filings cannot be considered assertions of the speedy-trial right under the *Barker* analysis because they were not considered and ruled on by the trial court. *See Ussery v. State*, 596 S.W.3d 277, 288 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd) (concluding that defendant's assertion of speedy-trial right in his pro se motions was ambiguous because motions "were not required to be considered by the trial court and it is unclear if, or when, those motions or other assertions of his right to speedy trial were presented to the trial court"); *Daniels v. State*, No. 04-18-00474-CR, 2019 WL 1139553, at *4 n.5 (Tex. App.—San Antonio Mar. 13, 2019, no pet.) (mem. op., not designated for publication) (holding that "[b]ecause [defendant] was represented by counsel when he filed his *pro se* motions, [reviewing court] cannot consider them for purposes of the *Barker* analysis").

The only motion mentioning the right to a speedy trial ruled on by the trial court is the one filed by appointed counsel on October 26, 2022. In that motion, Appellant did not demand a speedy

---

[8] Appellant moved to quash the indictment, to dismiss, and to reduce bond. He also filed a motion in limine.

trial. Instead, he sought dismissal of the indictment on speedy-trial grounds. During the hearing on the motion, defense counsel similarly asked the trial court to "dismiss" the case. "Filing for a dismissal instead of a speedy trial will generally weaken a speedy-trial claim because it shows a desire to have no trial instead of a speedy one." *Cantu*, 253 S.W.3d at 283.

Because Appellant did not validly and unambiguously assert his right to a speedy trial and sought a dismissal rather than a speedy trial, we conclude that the third factor weighs heavily against him.

### D. Prejudice

The fourth *Barker* factor encompasses any prejudice to the defendant because of the length of delay. Appellant carries the burden to show some prejudice, but a showing of actual prejudice is not required. *Balderas*, 517 S.W.3d at 772. In determining whether a defendant has been prejudiced, we consider the three interests a speedy trial is intended to guarantee: "(1) preventing oppressive pretrial incarceration; (2) minimizing the anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired." *Id.* at 772. Of these interests, the third one "is the most important because the fairness of the criminal-justice system is distorted when a defendant is unable to adequately prepare his defense." *Id*.

Taking these interests in turn, we find that Appellant presented some evidence of prejudice, yet we cannot assign great weight to it because none of that prejudice is shown to have impaired his ability to defend himself—the third and most important interest.

Appellant testified that he had been incarcerated for "three years and eleven months altogether" as of August 2022 when trial was scheduled to begin. For some of that period, he was assigned to a segregated jail unit ("red") that meant being held in a small cell for 23 hours but sometimes for 32 hours, not communicating with family, not seeing the sun, and not exercising

outside the cell. The record does not show how much of Appellant's incarceration included this segregated unit. And Appellant was incarcerated three times; (1) from his initial arrest on February 3, 2018 until he was released on a personal recognizance bond on December 6, 2019; (2) starting on June 17, 2020 when he was rearrested for violating his PR bond based on a new charge until August 1, 2022 when the State dismissed the first indictment; and (3) from his rearrest on the new indictment on October 10, 2022 until trial.

Appellant also testified that his lengthy pretrial incarceration impacted his mental health, even while released: "It's messed me up a lot. It -- this is a lot. It's depressing. It's discouraging. A lot of things. When I got out, I didn't feel right. I felt people staring at me and I just -- this has taken a real big toll on me." He added that his detention had impacted his family relationships. According to Appellant, he was unable to see his children while incarcerated and, because of his charges, he could not continue custody proceedings of his daughter, who was molested after being returned to her family. Appellant also related that his grandparents died while he was incarcerated and that he was unable to attend their funerals.

The record corroborates Appellant's lengthy pretrial incarceration, though more than half of it could have resulted in his own actions leading to the revocation of the PR bond. There is no other evidence in the record corroborating or rebutting Appellant's testimony as to his anxiety and concern. But the State argues that Appellant's testimony is not enough to conclude that he suffered any anxiety or concern beyond that ordinarily associated with being charged with a crime. *See Cantu*, 253 S.W.3d at 286 ("[E]vidence of generalized anxiety, though relevant, is not sufficient proof of prejudice under the *Barker* test, especially when it is no greater anxiety or concern beyond the level normally associated with a criminal charge or investigation."). Appellant recognizes in his brief, many of the purported harms—psychological distress, family disruption, and solitary

confinement—resulted from the nature of the charges against him rather than the length of delay. Even so, there is no dispute that Appellant was incarcerated for years while awaiting trial. There is thus probative evidence of some prejudice.

On appeal, Appellant focuses on the length of incarceration and its impacts on Appellant but he does not develop a factual basis for how it impaired his defense at trial.[9] Instead, relying on *Doggett*, Appellant argues that he need not specifically show how the delay impaired his defense because the excessive delay alone presumptively establishes prejudice, an argument he did not raise in the trial court. Appellant focuses on the Court's statement in *Doggett* that "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove . . . or identify." *Doggett*, 505 U.S. at 655–56. But that reliance is misplaced because *Doggett* itself recognized, in the very next sentence that "such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria . . . ." *Id*. at 656. Moreover, the period of delay that might create presumptive prejudice must be assignable to the State, either through its negligent delay or intentional conduct. *Id.* at 657–58. As discussed above, we assign only a small portion of the delay to the State, which occurred later in the proceedings. It is hard to conceptualize how that delay presumptively prejudiced Appellant. Furthermore, any presumptive prejudice that may exist because of the length of the delay is extenuated by a defendant's acquiescence in the delay or by his failure to employ a remedy that would have guaranteed him a speedy trial. *Dragoo*, 96 S.W.3d at 315; *Hopper v. State*, 520 S.W.3d 915, 929 (Tex. Crim. App. 2017). Indeed, "[d]elay is not an uncommon defense tactic" and "may work to the accused's advantage." *Barker*, 407 U.S. at 521.

---

[9] At the hearing below, Appellant called his private investigator who identified two witnesses that the investigator was not able to locate, and one who had died by the time the investigator located him. He does not advance in his brief on appeal that these persons would have helped his defense.

We assess this fourth *Barker* factor as neutral or at most only slightly favoring Appellant. Although Appellant has shown some evidence of prejudice to his person resulting from his lengthy pretrial incarceration, the prejudice is mitigated greatly by his own behavior, his acquiescence in much of the delay, and his failure to establish that the delay presumptively impaired his defense.

### E. Balancing the factors

While we rely on the trial court's first-hand view to decide facts, our balance of the four factors is de novo. *Balderas*, 517 S.W.3d at 768. That de novo review is guided by these cautionary comments from the Texas Court of Criminal Appeals:

> Because dismissal of the charges is a radical remedy, a wooden application of the *Barker* factors would infringe upon "the societal interest in trying people accused of crime, rather than granting them immunization because of legal error." Thus, courts must apply the *Barker* balancing test with common sense and sensitivity to ensure that charges are dismissed only when the evidence shows that a defendant's actual and asserted interest in a speedy trial has been infringed. The constitutional right is that of a speedy trial, not dismissal of the charges.

*Cantu*, 253 S.W.3d at 281 (quoting *United States v. Ewell*, 383 U.S. 116, 121 (1966) (footnotes omitted)).

The length of delay weighs heavily in Appellant's favor. We also acknowledge that he has shown some prejudice from this delay for its impact on him, but not for the conduct of his defense. The factor that weighs most heavily against Appellant was the failure to assert his right to a speedy trial, and when he first did so, he sought dismissal and not trial. Other than the pro se filings of a represented party—which courts do not consider—the first mention of the speedy trial right appears in the 53rd month of a 57-month proceeding. And finally, while we can ascribe some delay to the State, and some to the judicial system, most of the delay stemmed from factors outside anyone's control or Appellant's (or his counsel's) conduct. A holistic balance of the four factors does not support Appellants' claim. *See Balderas*, 517 S.W.3d at 773 (reaching the same

19

conclusion based on analogous assessment of the same factors); *Munoz-Cruz v. State*, No. 04-21-00173-CR, 2022 WL 3908847, at *4–5 (Tex. App.—San Antonio Aug. 31, 2022, no pet.) (mem. op., not designated for publication) (same).

## CONCLUSION

We overrule Appellant's sole issue. We affirm the trial court's judgment.

JEFF ALLEY, Chief Justice

January 31, 2024

Before Alley, C.J., Palafox and Soto, JJ.

(Do Not Publish)